*481 Mary Beth Kelly, J.
These cases present two related issues under Michigan’s no-fault act:[1] (1) whether a child of divorced parents who has a legal residence in both parents’ homes and who is injured in an automobile accident can be “domiciled” in more than one household within the meaning of MCL 500.3114(1); and (2) whether a family court order establishing the custody of minor children is conclusive evidence of a child’s domicile for purposes of determining coverage under MCL 500.3114(1). We hold, consistent with traditional definitions of the term “domicile” under the common law and as that term is used in MCL 500.3114(1), that a child of divorced parents has only one domicile at any given point in time. Further, in the event that the child’s parents are divorced and a family court has entered an order relating to custody, we hold, consistent with the common law of domicile as it pertains to minors and the legally binding nature of custody orders, that the child’s domicile is established by operation of law and that the custody order is thus determinative of the child’s domicile for all purposes, including the no-fault act.
In both Grange and ACIA, the respective judgment of divorce and custody order conclusively established the minor children’s domiciles. Accordingly, we reverse the judgment of the Court of Appeals in Grange, which erroneously held that a minor of divorced parents can have two domiciles, and we remand to the circuit court for entry of summary disposition in favor of Grange Insurance Company. In ACIA, we reverse the judgment of the Court of Appeals, which erred by concluding that a question of fact existed regarding the child’s domicile, and we remand to the circuit court for entry of summary disposition in favor of ACIA.
*482 I. FACTS AND PROCEDURAL HISTORY
A. GRANGE v LAWRENCE
Edward Lawrence and Laura Rosinski were married in 1997 and had two daughters, Katelyn and Josalyn, the latter of whom is the deceased insured in this case. Lawrence and Rosinski divorced in 2005; Rosinski remained in the marital home and Lawrence moved into his parents’ home, both located in Muskegon, Michigan. The judgment of divorce granted Lawrence and Rosinski joint legal custody of Josalyn and Katelyn, but Rosinski was given “primary physical custody” of the girls. The judgment of divorce provided Lawrence with frequent parenting time, including alternating weekends, Wednesday evenings, alternating holidays, liberal phone contact, and liberal parenting time when Rosinski was unavailable. The judgment of divorce further provided:
A parent whose custody or parenting time of a child is governed by this order, shall not change the legal residence of the child except in compliance with [MCL 722.31], which prohibits moving a child out of the State of Michigan or greater than 100 miles from the non-custodial parent without a court order. The party awarded custody must notify the Friend of the Court, in writing, immediately, when the minor child is moved to another address.
On September 24, 2009, eight-year-old Josalyn was a passenger in a car owned and driven by Rosinski when another driver ignored a stop sign and hit Rosinski’s vehicle, resulting in fatal injuries to Josalyn. Rosinski and Lawrence were appointed as joint personal representatives of Josalyn’s estate.[2]
*483 After the accident, Rosinski and Lawrence submitted claims for personal injury protection (PIP) insurance benefits to their respective insurers. Rosinski was the named insured on an automobile insurance policy provided by Farm Bureau General Insurance Company of Michigan (Farm Bureau); Lawrence was the named insured on an automobile insurance policy provided by Grange Insurance Company (Grange). Farm Bureau insured the car that was involved in the accident and Grange did not insure any vehicle involved in the accident. With regard to Rosinski’s claim, Farm Bureau paid more than $30,000 in PIP benefits for Josalyn’s injuries and death; Grange denied Lawrence’s claim for PIP benefits.
Subsequently, Farm Bureau asserted that Grange was in the same order of priority for the payment of PIP benefits because, in its view, Josalyn was “domiciled” in both parents’ homes pursuant to MCL 500.3114(1); Farm Bureau thus sought from Grange partial reimbursement of benefits pursuant to MCL 500.3115(2). Grange denied the claim and filed a complaint for declaratory relief, seeking a declaration that Josalyn was domiciled with Rosinski, not Lawrence, at the time of the accident. Grange asserted that it was not required to reimburse Farm Bureau for any of the PIP benefits that Farm Bureau had paid because Josalyn was not “domiciled” with Lawrence at the time of the accident as required by MCL 500.3114(1), and Michigan law does not recognize dual domiciles. Grange further asserted that it was not obligated to pay PIP benefits for Josalyn’s injuries because Josalyn was not a named insured under its policy.[3]
*484 Farm Bureau filed a counterclaim seeking a declaratory judgment that Josalyn was domiciled with each of her parents at the time of the accident and that Farm Bureau was entitled to partial reimbursement of the PIP benefits it had paid. Farm Bureau also argued that the Grange policy conflicted with the no-fault act by excluding Josalyn as an insured through its automatic attribution of domicile to the residence of the custodial parent.
Both insurance companies filed motions for summary disposition pursuant to MCR 2.116(0(10) and the circuit court granted summary disposition to Farm Bureau. Applying the factors that are traditionally used to determine domicile under the no-fault act as set forth in Workman v Detroit Automobile Inter-Insurance Exchange[4] and Dairyland Insurance Co v Auto-Owners Insurance Co,[5] the circuit court concluded that Josalyn had two domiciles at the time of the accident, one with each parent. The circuit court thus ordered Grange to reimburse Farm Bureau for 50 percent of the PIP benefits Farm Bureau had paid and 50 percent of Farm Bureau’s processing expenses.
Grange appealed to the Court of Appeals, which affirmed the circuit court’s decision.[6] The Court of Appeals rejected Grange’s argument that Michigan law *485 does not recognize dual domiciles for a minor child of divorced parents because, according to the panel, “[t]he Michigan Supreme Court has . .. determined ... for purposes of the no-fault act, [that] the terms ‘domicile’ and ‘residence’ are ‘legally synonymous’ ” and “nothing in MCL 500.3114(1) . . . limits a minor child of divorced parents to one domicile or defines domicile as a ‘principal residence.’ ”[7] After applying the domicile factors from Workman and Dairyland, the Court of Appeals concluded that the undisputed evidence established that Josalyn resided with both parents. Regarding the effect of the judgment of divorce, which established primary physical custody with Rosinski, the Court of Appeals stated, “that order does not change the fact that the evidence showed that Josalyn actually resided with both her parents, which is the relevant inquiry under the no-fault act.”[8] The Court of Appeals also held that Grange’s policy was invalid because the policy, which requires a court adjudication of custody to be conclusive for determining a child’s principal residence, would limit Grange’s “obligation where the no-fault act does not... .”[9]
Grange sought leave to appeal, which this Court granted.[10]
*486 B. ACIA V STATE FARM
In this case, Sarah is the minor child fatally injured in a motor vehicle accident. Sarah’s parents, Francis Campanelli and Tina Taylor, were divorced in Michigan in 1995. The original judgment of divorce granted joint legal custody of Sarah and her sister, Ashley, to both parents and “physical custody” to Campanelli, allowing Taylor only reasonable visitation. Additionally, the judgment of divorce contained the following provision:
DOMICILE OF THE MINOR CHILDREN
The domicile or residence of said minor children shall not be removed from the State of Michigan without the prior approval of the Court, and that [Campanelli] shall promptly notify the Friend of the Court whenever said children Eire moved to Emother address.
A little more than a year after the family court granted the judgment of divorce, Campanelli secured a job in Tennessee that offered a considerable improvement in his career. He moved the family court to modify the original judgment of divorce and successfully obtained an order in February 1996, as the custodial parent, permitting him to change the children’s domicile to the state of Tennessee.[11] Under the terms of that order, Taylor was entitled to six weeks of visitation in the summer, and Campanelli and Taylor were to alternate the one-week Easter, Christmas, and winter school vacations. The February 1996 order did not otherwise modify either the joint legal custody originally granted to both parents or the physical custody awarded to Campanelli.
*487 In 2007, when Sarah was 16-years-old, she went to Michigan to stay for the summer with her mother, who lived with Sarah’s great-uncle, Terry Gravelle, in Howell, Michigan. During the time that she lived with her mother, Sarah decided that she wanted to get to know Taylor better and, with Campanelli’s permission, remained in Michigan with her mother and attended high school that fall.[12]
On November 26, 2007, Sarah was a passenger in a car driven by her friend, Kayla, and insured by State Farm Mutual Automobile Insurance Company (State Farm). Kayla lost control of the car, which careened off the road and into a tree, resulting in what would ultimately be fatal injuries to Sarah. The severe injuries Sarah sustained required medical care. Automobile Club Insurance Association (ACIA), as the insurer of Sarah’s uncle, Gravelle, in whose household Sarah resided, paid Sarah’s medical bills during the period before her death.[13]
*488 ACIA commenced an action in the circuit court to secure determinations that (1) Sarah was not “domiciled” in Michigan, (2) ACIA, therefore, was not responsible for Sarah’s PIP benefits under MCL 500.3114(1), and (3) State Farm, as the insurer of the vehicle in which Sarah was a passenger when she was injured, was the responsible insurer pursuant to the no-fault priority provision of MCL 500.3114(4). State Farm denied liability and both providers filed cross-motions for summary disposition under MCR 2.116(C)(10).
The circuit court granted summary disposition in favor of State Farm, finding that Sarah “had residency in Michigan with her mother and her uncle at the time of the motor vehicle accident.”[14] The circuit court noted the conflicting testimony on the issue of Sarah’s intent to return to Tennessee, but then concluded that the record reflected a “lack of evidence of a clear intent to return to Tennessee . ...” In support, the circuit court cited the absence of any definite actions by Sarah to withdraw from school in Michigan and reenroll in school in Tennessee, coupled with indications that Sarah regarded her mother’s residence as her own. Accordingly, because the circuit court found that Sarah was domiciled in Michigan, it ruled that ACIA was responsible for Sarah’s PIP benefits under MCL 500.3114(1).
The Court of Appeals reversed, reasoning that the evidence of Sarah’s domicile, and in particular her intent, presented a question of fact for resolution by the jury and that summary disposition was, thus, not *489 proper for either party.[15] The Court of Appeals also rejected ACIA’s argument that the judgment of divorce and subsequent February 1996 order modifying domicile conclusively established Sarah’s domicile for all purposes. According to the panel, the family court “did not determine Sarah’s domicile for the purpose of insurance coverage, and there is no authority that suggests that [the circuit court in the insurance dispute] was required to adopt the ruling of different jurisdictions deciding the issue for a different purpose for different parties.”[16]
State Farm applied to this Court for leave to appeal and ACIA filed a response to that application, as well as a cross-application. We ordered argument on whether to grant the applications or take other action.[17]
II. STANDARD of review
This Court reviews de novo a decision to grant or deny a motion for summary disposition.[18] Summary disposition under MCR 2.116(0(10) is appropriately granted where no genuine issue of material fact remains and the moving party is entitled to judgment as *490 a matter of law.[19] A domicile determination is generally a question of fact; however, where the underlying material facts are not in dispute, the determination of domicile is a question of law for the circuit court.[20] We likewise review de novo issues of statutory interpretation.[21]
III. ANALYSIS
Michigan’s no-fault act generally abolishes tort liability arising from the ownership, maintenance, or use of a motor vehicle.[22] Instead, insurance companies are required to provide first party insurance benefits for accidental bodily injury arising out of the use of a motor vehicle, which are commonly referred to as personal protection insurance (PIP) benefits.[23] In this regard, MCL 500.3114(1), which is at the center of the litigation in both these cases, provides the general rule for determining which Michigan insurer is liable to provide PIP benefits. The statute provides, in relevant part:
[A] personal protection insurance policy described in [MCL 500.3101(1)] applies to accidental bodily injury to the person named in the policy, the person’s spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident.[24]
In these cases, the parties dispute whether the injured individual was a relative of the insured who was “domiciled in the same household” as the insured.
*491 In the instance that more than one insurer’s policy is applicable to the injured person under this provision, then the priority provision of MCL 500.3115(2) is triggered and may allow an insurer to recoup benefits from other insurer(s) of equal priority.[25] This is the legal situation in Grange, wherein the lower courts held that Josalyn had two “domiciles” within the meaning of MCL 500.3114(1) — one with Lawrence insured by Grange and another with Rosinski insured by Farm Bureau. Pursuant to MCL 500.3115(2), the lower courts thus concluded that Grange is an insurer of equal priority with Farm Bureau, thereby entitling Farm Bureau to partial recoupment of the PIP benefits that it had paid on Josalyn’s behalf.
Comparatively, in some instances no insurer’s PIP policy is applicable to the injured person under MCL 500.3114(1) because the person is not “the person named in the policy, the person’s spouse, [or] a relative of either domiciled in the same household ....” In this event, MCL 500.3114(4) may apply such that the insurer of the accident vehicle is liable for PIP benefits to the occupant of a motor vehicle. MCL 500.3114(4) provides:
Except as provided in [MCL 500.3114(1)-MCL 500.3114(3)], a person suffering accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:
*492 (a) The insurer of the owner or registrant of the vehicle occupied.
(b) The insurer of the operator of the vehicle occupied.
This is the legal posture of ACIA, where the dispute involves whether Sarah was “domiciled with a relative” in Michigan for the purposes of MCL 500.3114(1), or instead, whether MCL 500.3114(4) applies. The circuit court concluded that Sarah was domiciled in Michigan, thus making ACIA, the insurer of Sarah’s uncle with whom she resided in Michigan, liable for PIP benefits rather than State Farm, the insurer of the accident vehicle.
The pivotal inquiry in both these insurance-coverage disputes, then, turns on the interpretation of the term “domiciled” as it is used in MCL 500.3114(1). Mainly, the meaning of “domicile,” and specifically how a child’s domicile is determined, will dictate the ultimate determination of which insurer is liable for PIP benefits in each case. Our inquiry first addresses the preliminary issue raised only in Grange: whether a child of divorced parents injured in a motor vehicle accident can be “domiciled” in more than one household for purposes of the no-fault act. We next consider the question posed in both Grange and ACIA: whether a family court order pertaining to a child’s custody conclusively establishes a child’s domicile under the no-fault act.
A. DOMICILE AND THE NO-FAULT ACT
Notably, the no-fault act does not define the term “domiciled.” The unambiguous language of MCL 500.3114(1) simply states that “a personal protection insurance policy . . . applies to accidental bodily injury to the person named in the policy, the person’s spouse, and a relative of either domiciled in the same house *493 hold . . . .”[26] When construing this statutory language, our main objective is to discern the Legislature’s intent through the language plainly expressed.[27] Normally, this Court will accord an undefined statutory term its ordinary and commonly used meaning.[28] However, where the Legislature uses a technical word that has acquired a particular meaning in the law, and absent any contrary legislative indication, we construe it “according to such peculiar and appropriate meaning.”[29] The term “domicile” is just such a word that has a precise, technical meaning in Michigan’s common law, and thus must be understood according to that particular meaning.
For over 165 years, Michigan courts have defined “domicile” to mean “the place where a person has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning.”[30] Similarly, a person’s domicile has been defined to be “ ‘that place where a person has voluntarily fixed his abode not for a mere special or temporary purpose, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time.’ ”[31] In this regard, the Court has recognized that “[i]t may be laid down as a settled maxim that every man must have such a national domicile somewhere. It is equally well *494 settled that no person can have more than one such domicile, at one and the same time.”[32] From this settled principle, it follows that
a man retains his domicile of origin [upon his birth] until he changes it, by acquiring another; and so each successive domicile continues, until changed by acquiring another. And it is equally obvious that the acquisition of a new domicile does, at the same instant, terminate the preceding one.[33]
In this way, our common law has recognized that from the time of a person’s birth — from childhood through adulthood — a person can only have a single domicile at any given point in time. Indeed, there are few legal axioms as established as the one providing that every person has a domicile, and that a person may have one — and only one — domicile.
In furtherance of this understanding of domicile, the common law has necessarily distinguished between the concepts of “domicile” and “residence:”
The former, in its ordinary acceptation, was defined to be, ‘A place where a person lives or has his home,’ while ‘[a]ny place of abode or dwelling place,’ however temporary it might have been, was said to constitute a residence. A person’s domicile was his legal residence or home in contemplation of law.[34]
Stated more succinctly, a person may have only one domicile, but more than one residence.[35] For purposes of *495 distinguishing “domicile” from “residence,” this Court has explained that “domicile is acquired by the combination of residence and the intention to reside in a given place .... If the intention of permanently residing in a place exists, a residence in pursuance of that intention, however short, will establish a domicile.”[36] The traditional common-law inquiry into a person’s “domicile,” then, is generally a question of intent, but also considers all the facts and circumstances taken together.[37]
Returning to the language of MCL 500.3114(1), there is no indication that the Legislature intended to deviate from this well established common-law meaning of the term “domicile.” And, because a person, from the moment of his birth onward, can only have one domicile within the traditional meaning of that term, it follows that a child, regardless of his parents’ marital status or his multiple legal residences, may also have only one domicile at any given point in time.[38]
Indeed, rather than there being any indication that the Legislature intended to deviate from this common-law rule, there is, in fact, evidence that the Legislature favored this single-location rule. Had the Legislature intended to make insurers liable for PIP benefits for dual coexisting “domiciles,” then it would have used the term “resided,” not “domiciled,” because, as previously *496 explained, a person may have more than one residence at a time, but only one domicile. However, the Legislature instead expressly chose to use the more restrictive term, “domiciled,” thereby limiting the universe of insurers that are potentially liable under MCL 500.3114(1). In fact, the Legislature specifically rejected use of the term “residence,” as used in the uniform act on which the no-fault act is modeled, in favor of the term “domiciled” in defining those eligible for PIP benefits under MCL 500.3114(1).[39] The Legislature thus affirmatively chose a term that it knew had a particular meaning, and we must accord this legislative choice its full weight when determining the Legislature’s intent.
Therefore, given the absence of any indication that the Legislature intended a contrary meaning, the Legislature’s use of the term “domiciled,” evinces an intent to incorporate all those common-law legal concepts related to that term, including the law of domicile as it relates to minors more fully addressed below. Accordingly, consistent with the traditional common-law principle that a person may have only one domicile at a given point in time, we hold that a child, whose parents are divorced and who has more than one legal residence, may have only a single domicile at any one point in time that continues until the child acquires a different one.
*497 Farm Bureau, however, suggests that we should reach the opposite conclusion — that a child of divorced parents who has two legal residences may also have two coexisting domiciles, one with each parent. In support, Farm Bureau, like the Court of Appeals in Grange, asserts that our decision in Workman specifically recognized “residence” and “domicile” to be legally synonymous for purposes of MCL 500.3114(1), meaning that, just as a person can have more than one residence, a person can also have more than one “domicile.” In Workman, the seminal case in which we interpreted the phrase “domiciled in the same household” as used in MCL 500.3114(1), we considered whether the claimant, the insured’s adult daughter-in-law, was domiciled in the same household as the insured. After noting that no caselaw interpreted the phrase, “domiciled in the same household,” we articulated a flexible multi-factor test to aid courts in determining domicile, in which no one factor is determinative.[40] The factors to be considered included:
(1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his “domicile” or “household; (2) the formality or informality of the relationship between the person and the members of the household; (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises, (4) the existence of another place of lodging by the person alleging “residence” or “domicile” in the household ... .[41]
*498 In articulating this test, the Court stated:
Although the statutory language of [MCL 500.3114(1)] refers to persons “domiciled in the same household” as an insured, we believe this body of law [that deals with the question of whether a person is a ‘resident’ of an insured’s ‘household’ under particular insurance policies,] is analytically applicable to the consideration before us. We conclude this because, in this state, the terms “domicile” and “residence” are legally synonymous (except in special circumstances)[42]
It is this final phrase — “the terms ‘domicile’ and ‘residence’ are legally synonymous” — on which Farm Bureau and the Court of Appeals rely. This statement, however, when read in context of the entire opinion, does not stand for the proposition that domicile is the equivalent of residence under MCL 500.3114(1). Rather, Workman merely acknowledged that, generally, “residence” has sometimes been given the equivalent *499 meaning of “domicile.” Workman did not, however, establish that interpretation as an absolute rule. Indeed, this point is bolstered by the cases Workman cites in support of its statement that “the terms ‘domicile’ and ‘residence’ are legally synonymous.” Workman first cited to Gluc v Klein,[43] where this Court recognized the traditional common-law distinction between “residence” and “domicile,” but noted that sometimes the Legislature has given residence the same meaning as domicile. We later made the same point in both Hartzler v Radeka[44] and Reaume & Silloway, Inc v Tetzlaff.[45] Further, the two cases Workman cited as “special circumstances” in which “domicile” and “residence” are not synonymous both involved determining a minor’s domicile for purposes of applying relevant statutes.[46]
However, the corollary — that domicile has sometimes been given the same meaning as residence — is simply not true. This Court has never interpreted “domicile” to be the equivalent of “residence,” as demonstrated by the cases Workman cites and the preceding discussion regarding the common-law meaning of domicile. Indeed, Workman itself cannot reasonably be interpreted to advocate such a conclusion, given that Workman adopts a multifactor domicile test that is analytically the same as the traditional domicile test employed for more than a century at common law. Stated otherwise, Workman is entirely consistent with our conclusion *500 that the term “domicile” is to be interpreted the same as its common-law meaning.
Our holding thus clarifies, that to the extent that Workman has been understood to imply that “domicile” and “residence” retain no independent significance for the purposes of the no-fault act, such a conclusion is not valid and that “domicile” must be understood consistent with its historical underpinnings. Further, although Workman recognized that “domicile” and “residence” are often used interchangeably by the Legislature in other contexts and, therefore described the terms as synonymous in those situations, Workman also explained that it is often necessary to distinguish between the terms consistent with the Legislature’s intent, as in the instant case.[47]
The Court of Appeals in Grange therefore erred by interpreting Workman to mean that domicile is the equivalent of residence and that a minor child can be “domiciled” for purposes of MCL 500.3114(1) in multiple residences.[48] Neither Workman nor the plain lan *501 guage of MCL 500.3114(1) support this conclusion. The Court of Appeals’ holding in Grange, and Farm Bureau’s adherence to that position, is plainly inconsistent with our jurisprudence regarding the meaning of “domicile” and the clear language of MCL 500.3114(1) which, as we have explained, incorporates the common-law meaning of that term.
B. DETERMINING A CHILD’S DOMICILE
Our holding, that a child may have only one domicile at any one time consistent with traditional common-law principles, does not establish how a child’s single domicile is determined. Workman and its progeny applying the traditional domicile test defined domicile in relation to an adult but, for reasons that we will explain, these factors are not helpful in determining a child’s domicile. To resolve how a child’s domicile is determined — and given our conclusion that the Legislature intended that the term “domiciled,” as used in MCL 500.3114(1), be interpreted consistent with its common-law meaning — we further consider the law of domicile as it pertains to minors.
i. THE COMMON LAW OF DOMICILE PERTAINING TO MINORS
Our common law recognizes three means of acquiring a domicile, which are generally applicable to all persons depending on the factual circumstances, including: (1) domicile of origin or of nativity; (2) domicile of choice; and (3) domicile by operation of law.[49] A domicile of origin or of nativity is established when a person is *502 born, fulfilling the maxim that every person has a domicile from the time of birth.[50] Meanwhile, a domicile by choice occurs when a person replaces his current domicile by choosing another, consistent with the proposition that every person must have a domicile until a new domicile is determined. Finally, a domicile by operation of law occurs when a person with a legal disability lacks the capacity to acquire a domicile of choice, and thus the domicile is established by operation of law.[51]
Typically, as indicated in the preceding discussion and demonstrated by the Workman factors, an adult acquires a new domicile by choosing one of his or her choice, which makes the question of intent a preeminent concern in determining an adult’s domicile. One of the requisites for acquiring a domicile of choice, then, is the legal capacity necessary to form the intent required to select a new domicile.[52]
Regarding children, a child’s ability to acquire a new domicile is limited in ways that an adult’s ability to acquire a domicile is not. This is because, for purposes *503 of our legal system, an unemancipated child, unlike a competent adult, lacks the legal capacity to make legally binding determinations for him or herself and, therefore, a child lacks the capacity to acquire a domicile of choice.[53] Thus, while intent is critical for determining the domicile of an adult, a child’s intent regarding domicile is simply irrelevant, and the traditional factors applied in determining an adult’s domicile are likewise irrelevant. Instead, the child’s domicile is determined by reference to the domicile of his or her parents.[54] For instance, our common law has recognized that when a child is born, the child acquires a domicile of origin, which is that of his father.[55] The child’s domicile of origin remains the child’s domicile until a new domicile is acquired through the actions of the child’s parents or until that point in time when the minor, either through emancipation or by reaching the age of majority, can acquire a domicile of choice.[56]
*504 The inquiry into a child’s domicile becomes more complicated when the child’s parents are divorced. Our common law, however, has accounted for these types of familial situations. Specifically, nearly a century ago in In re Volk,[57] this Court considered the domicile of a child for purposes of determining whether Michigan courts must accord full faith and credit to Ohio judgments pertaining to a child. In that case, the parents of the minor child had previously lived in Ohio, but after their divorce the mother established a new domicile in Michigan. The Court explained:
[U]nder the decree of divorce, the mother was given [the child’s] unrestricted custody. His domicile thereafter became that of his mother, and, when she removed to this State and became domiciled here, the domicile of the child was in Michigan.[58]
By acknowledging that the child’s domicile changed by operation of law as a result of the decree of divorce, this Court expressly recognized that a child’s domicile, upon the divorce or separation of the child’s parents, is the same as that of the parent to whose custody he has been legally given pursuant to a custody order.[59] More simply *505 put, In re Volk held that a custody determination is determinative of a child’s domicile.[60] Under our common law, then, a child’s domicile upon the divorce of his parents and entry of a custody order is established by operation of law consistent with the terms of the custody order.
We reaffirm these common-law principles and, in doing so, we emphasize that domicile is a singular concept. Just as a person does not have two domiciles, a person likewise does not have a domicile set by operation of law for some purposes and perhaps a different domicile for other purposes — such as for consideration under the no-fault act or any other statute that uses the term “domicile.” A person’s domicile for one purpose is his domicile for all purposes; similarly, a child does not have a domicile set by court order only for certain purposes, but not others.[61] The Legislature made a deliberate choice in selecting the term “domiciled” in *506 Michigan’s no-fault act, and where domicile is set by operation of law, that determination must be given full legal effect.
Our analysis could end with articulation of this common-law rule and affirmation of these principles. We would be remiss, however, not to acknowledge that child custody orders are created pursuant to the provisions of the Child Custody Act,[62] which was enacted 40 years after In re Volk was decided. Consequently, because we have concluded that MCL 500.3114(1) incorporates the common law of domicile, which provides that a custody order is determinative of a child’s domicile, it is necessary to further consider whether the Child Custody Act is consistent with this common-law directive. We conclude that the Child Custody Act is consistent with the common-law rule and that the Act’s provisions enforce the traditional determinations regarding what entities have the legal capacity to establish a minor child’s domicile.
ii. THE CHILD CUSTODY ACT AND DOMICILE
The Child Custody Act governs the creation of child custody orders and provides a comprehensive statutory scheme for resolving custody disputes.[63] With it, the Legislature has sought to promote the best interests of children, which is the hallmark of any custody order. To this end, the Legislature has charged courts, in any dispute regarding custody, with “declaring] the child’s inherent rights and establishing] the rights and duties as to the child’s custody... in accordance with this act.”[64]
*507 At the outset, we note that the Child Custody Act is consistent with the notion that a child may have only a single domicile at any given point in time. Nowhere does the Child Custody Act indicate that a child may have dual domiciles, as Farm Bureau suggests. Rather, while the Child Custody Act permits a child to have a “legal residence with each parent,” that language serves merely as an acknowledgment that a child may have more than one residence.[65] Absent an express indication that the Legislature intended a different result, we will not presume that the Legislature intended to modify the common-law rule applicable to children and adults alike that a person may have only a single domicile at a given point in time.[66]
However, no provision of the Child Custody Act expressly provides that an order establishing custody or domicile is conclusive evidence of a child’s domicile for purposes of the no-fault act or otherwise. Moreover, the Act allows for myriad possible scenarios in postdivorce familial relationships, recognizing different combina *508 tions of legal and physical custody, and offering flexibility in terms of parenting time arrangements.[67] Ultimately though, we believe that the Child Custody Act and related court rules lend further support to the conclusion that a child’s domicile is established by a custody determination of the family court because that entity is the single entity entrusted by our laws with the capacity to determine domicile under these circumstances.
Once a custody order is entered pursuant to a judgment of divorce or otherwise, that custody order is legally binding on the parents and the order cannot be modified absent court approval or compliance with the applicable provisions of the Child Custody Act.[68] Because parents are legally bound by the terms of the custody order, the order therefore negates the parents’ *509 legal capacity, which is necessary to establish a domicile of choice for the minor child that is different from that established in the custody order. Specific provisions of the Child Custody Act support the notion that a parent’s ultra vires acts do not, as a matter of law, effect a change in a child’s court-ordered domicile: If a parent wishes to modify a custody order, the Act requires a parent to move for modification of the custody order and to demonstrate a proper cause or change of circumstances related to the established custodial environment.[69] And, in the instance that a parent seeks to change the child’s legal residence, the parent is prohibited from moving a child across state lines without court approval and, in some situations, is prohibited from moving the child more than 100 miles without prior court approval.[70] Therefore, that parents are legally *510 bound by custody orders mandates the conclusion that a child’s domicile is established by the court order as a matter of law.[71]
We thus believe that our prior conclusion — that in the instance where a child’s parents are divorced, the family court’s custody order entered pursuant to the Child Custody Act establishes the child’s domicile by operation of law and is determinative of the child’s domicile for purposes of the no-fault act — is consistent with the Child Custody Act itself.[72] This holding gives the best effect to the provisions of the Child Custody Act, which entrusts courts with making custody determinations in a child’s “best interests,” including those *511 related to living arrangements. Any contrary rule could foster noncompliance with custody orders entered under the Child Custody Act by implicitly sanctioning conduct that might establish a minor child’s domicile in contravention of a controlling custody order. Instead, adherence to the rule that the custody order controls the determination of a minor child’s domicile encourages compliance with legally binding court orders and statutory law.
Therefore, courts presiding over an insurance coverage dispute involving the minor child of divorced parents must treat a custody order as conclusive evidence of a child’s domicile.[73] Where a court order sets a child’s custody or domicile by operation of law, the factual circumstances or the parents’ or child’s intentions are irrelevant to the domicile determination.[74] Rather, the appropriate analysis is focused on the terms of the custody order. In directing courts to abide by the custody order, we are cognizant that the Child Custody Act draws a distinction between physical custody and legal custody: Physical custody pertains to where the child shall physically “reside,” whereas legal custody is understood to mean decision-making authority as to important decisions affecting the child’s welfare.[75] Because the focus under our common law with respect to domicile mostly concerns a question of location and the *512 same is true with respect to a child’s domicile in the instance that the parents are divorced,[76] the relevant consideration is which parent has physical custody under the terms of the order.[77] By way of example, a child’s domicile will be with a parent if the custody order grants that parent primary or sole physical custody, or expressly establishes domicile with that parent through a domicile provision, regardless of whether the parents share joint legal custody.[78]
*513 C. APPLICATION
i. GRANGE V LAWRENCE
When the family court entered the 2005 judgment of divorce between Lawrence and Rosinski, their child Josalyn acquired a domicile by operation of law consistent with the terms of the judgment of divorce. Specifically, the order granted Lawrence and Rosinski joint legal custody, while Rosinski was granted primary physical custody and Lawrence liberal parenting time. Because the order granted Rosinski primary physical custody, Josalyn’s domicile was with Rosinski. So long as Josalyn lacked the legal capacity to acquire a new domicile of choice and neither of her parents successfully moved to modify the order through a motion to change custody or residence under MCL 722.27 or MCL 722.31 in a family court of continuing jurisdiction, Josalyn’s domicile would remain with Rosinski pursuant to the terms of the judgment of divorce.
At the time of the accident in 2009 the judgment of divorce had never been modified pursuant to the provisions of the Child Custody Act. Nor had Josalyn reached the age of majority or become emancipated, such that she could acquire a different domicile of her own choosing. Therefore, at the time of the accident, Josa-lyn’s domicile was with Rosinski pursuant to the terms *514 of the judgment of divorce. In reaching the contrary conclusion that Josalyn was domiciled with both parents, the lower courts erred by concluding that a person could have dual domiciles, erred by failing to recognize the legal effect of the family court’s custody order, and erred by applying the Workman factors that are inapplicable to a person whose domicile is set by operation of law.
Therefore, because Josalyn can only have one domicile, it follows that she was not domiciled with Lawrence, Grange’s insured. The terms of the judgment of divorce provide conclusive evidence of Josalyn’s domicile and, there being no ambiguity in that order, there is no question of fact that Josalyn was domiciled in Rosinski’s household. It further follows that because Josalyn was not domiciled with Lawrence, Grange is not liable for Josa-lyn’s PIP benefits under MCL 500.3114(1). For this same reason, Grange is not an insurer of equal priority with Farm Bureau and, thus, Grange is not required to reimburse Farm Bureau under MCL 500.3115(2) for the PIP benefits it paid for Josalyn’s care following her accident.[79] The lower courts therefore erred by denying Grange summary disposition.
ii. ACIA V STATE FARM
In ACIA, the 1995 judgment of divorce granted Taylor and Campanelli joint legal custody, Campanelli *515 primary physical custody, and, in an express domicile provision, established Sarah’s domicile in Michigan with Campanelli. Upon entry of this order, Sarah’s domicile was established by operation of law and her parents no longer had the legal capacity to establish a different domicile of choice on Sarah’s behalf, and nor could Sarah, not having reached the age of majority and not being emancipated, acquire a new domicile of her own choosing. Campanelli, however, successfully moved for a change of residency in 1996 and the family court entered an order modifying the judgment of divorce by changing Sarah’s domicile to Tennessee. Taylor and Campanelli retained joint legal custody and Campanelli retained primary physical custody. Sarah’s domicile, then, was changed by operation of law to Tennessee upon entry of the 1996 order.
There is no dispute that the 1996 order expressly establishing Sarah’s domicile in Tennessee remained in effect at the time of the accident in 2007, when Sarah was only 16 years of age. Although Sarah was then residing with her mother in Michigan, Sarah was domiciled in Tennessee at the time of the accident as established by the 1996 order. There being no question of fact as to Sarah’s domicile in Tennessee, it is clear that ACIA, the insurer of the Michigan household, is not liable for Sarah’s PIP benefits under MCL 500.3114(1). Instead, State Farm is the insurer in first priority to pay PIP benefits, and the lower courts thus erred by denying ACIA summary disposition.
IV CONCLUSION
It has long been established in our common law that a person, including a child, may have only a single domicile at any one time. We reaffirm this principle and hold that a child of divorced parents who may have *516 more than one legal residence, nevertheless still has only one domicile at a given point in time, including for purposes of the no-fault act. In the instance that the child’s parents are divorced and a family court has entered an order relating to custody, we hold, consistent with our common law and the Child Custody Act, that the child’s domicile is established by operation of law and that the custody order is determinative of the child’s domicile for purposes of the no-fault act.
In Grange, the judgment of divorce conclusively established the minor child’s domicile with her mother at the time of the accident and, thus, Grange is not hable for providing PIP benefits following the child’s automobile accident. Accordingly, we reverse the judgment of the Court of Appeals in Grange and we remand to the circuit court for entry of summary disposition in favor of Grange.
In ACIA, the custody order conclusively established the minor child’s domicile with her father at the time of the accident and, thus, ACIA is not liable for providing PIP benefits following the child’s automobile accident. We thus reverse the judgment of the Court of Appeals and we remand to the circuit court for entry of summary disposition in favor of ACIA.
Young, C.J., and Cavanagh and Viviano, JJ., concurred with Kelly, J.

 MCL 500.3101, et seq.

 At the time of the accident, the 2005 judgment of divorce was still in effect. However, Lawrence had moved into a two-bedroom apartment, while Rosinski continued to reside in the former marital home.

 The pertinent portion of Grange’s policy provided PIP “benefits to or for an insured who sustains bodily injury... caused by an accident.” The Grange policy defined “insured” to include ‘You or any family member injured in an auto accident.” The Grange policy further defined “family member” as:
*484 [A] person related to you by blood, marriage or adoption and whose principal residence is at the location shown on the Declarations page. If a court has adjudicated that one parent is the custodial parent, that adjudication shall be conclusive with respect to the minor child’s principal residence. [Emphasis added.]

 Workman v Detroit Auto Inter-Ins Exch, 404 Mich 477, 496-497; 274 NW2d 373 (1979).

 Dairyland Ins Co v Auto-Owners Ins Co, 123 Mich App 675, 682; 333 NW2d 322 (1983).

 Grange Ins Co of Mich v Lawrence, 296 Mich App 319, 325; 819 NW2d 580 (2012).

 Id. at 323, 324.

 Id. at 324.

 Id. at 325.

 Grange Ins Co v Lawrence, 493 Mich 851 (2012). We directed the parties to address:
(1) whether a person, and in particular the minor child of divorced parents, can have two domiciles for the purpose of determining coverage under MCL 500.3114(1) of the Michigan no-fault act; (2) whether, in answering the first issue, a court order determining the minor’s custody has any effect; and (3) whether an insurance policy provision giving preclusive effect to a court-ordered custody arrangement is enforceable. [Id.]

 The family court’s order was entitled “Order Permitting Defendant to Change Children’s Domicile to the State of Tennessee.”

 Taylor provided Sarah with a room of her own in her uncle’s home, filed an affidavit of residence with the Howell Public Schools, affirming that Taylor lived in Howell and that Sarah resided with her. Taylor listed Gravelle’s address as their residence.

 In the meantime, Taylor, after learning that Campanelli was planning to have Sarah flown back to Tennessee for medical care, obtained an ex parte order from the Wayne Circuit Court purporting to transfer Sarah’s custody to Taylor and her domicile to Taylor’s Michigan address. The Wayne Circuit Court later reversed itself on January 7, 2008, vacating the ex parte order and declaring it void ah initio. By that time, however, Sarah had passed away from her injuries. Sarah’s parents, however, continued to litigate. Taylor sought to open an estate for Sarah in Livingston County Probate Court, contending that Sarah was domiciled in Michigan when she died. After a two-day testimonial hearing, the probate court ruled that, consistent with the provisions of the family court’s orders in the divorce proceedings, Sarah was domiciled in Tennessee, not in Michigan, on the date of her death. The probate court entered orders pursuant to its ruling, declaring Sarah to be a “nonresident of Michigan” and giving Campanelli the right to make decisions regarding funeral arrangements for Sarah.

 The circuit court concluded that it was not bound by the probate court’s determination that Sarah was domiciled in Tennessee, see note 13, because the parties to the probate court proceedings were different.

 Auto Club Ins Ass’n v State Farm Mut Auto Ins Co, unpublished opinion per curiam of the Court of Appeals, issued June 21, 2011 (Docket No. 294324).

 Id. at 4-5.

 Auto Club Ins Ass’n v State Farm Mut Auto Ins Co, 491 Mich 875 (2012). We directed the parties to address “whether legal residence and domicile of the insured minor were conclusively established in Tennessee pursuant to the judgment of divorce entered by the Wayne Circuit Court, as amended, or whether the minor had the capacity to acquire a different legal residence or domicile of choice.” Id., citing Vanguard Ins Co v Racine, 224 Mich App 229, 233; 568 NW2d 156 (1997); MCR 3.211(C)(1) and (3); 8 Mich Civ Jur, Domicile, § 7; Restatement, Conflict of Laws, 2d, §§ 15 and 22(1) comments a and d.

 Elba Twp v Gratiot Co Drain Com’r, 493 Mich 265, 277; 831 NW2d 204 (2013).

 Quinto v Cross & Peters Co, 451 Mich 358, 362; 547 NW2d 314 (1996).

 Hartzler v Radeka, 265 Mich 451, 452; 251 NW 554 (1933).

 Elba Twp, 493 Mich at 278.

 See MCL 500.3105.

 MCL 500.3107; MCL 500.3108.

 MCL 500.3114(1) (emphasis added).

 MCL 500.3115(2) provides:
When 2 or more insurers are in the same order of priority to provide personal protection insurance benefits an insurer paying benefits due is entitled to partial recoupment from the other insurers in the same order of priority, together with a reasonable amount of partial recoupment of the expense of processing the claim, in order to accomplish equitable distribution of the loss among such insurers.

 Emphasis added.

 Title Office, Inc v Van Buren Co Treasurer, 469 Mich 516, 519; 676 NW2d 207 (2004).

 Herman v Berrien Co, 481 Mich 352, 366; 750 NW2d 570 (2008).

 MCL 8.3a.

 In re High, 2 Doug 515, 523 (Mich, 1847).

 Henry v Henry, 362 Mich 85, 101-102; 106 NW2d 570 (1960), quoting Williams v North Carolina, 325 US 226, 236; 65 S Ct 1092; 89 L Ed 1577 (1945) (quotation marks omitted).

 In re High, 2 Doug at 523 (emphasis added); see also In re Scheyer’s Estate, 336 Mich 645, 651-652; 59 NW2d 33 (1953) (“One cannot he permanently located in more than 1 place; one cannot be domiciled in more than 1 place; one cannot intend to remain for an extended period of time in more than 1 place.”).

 In re High, 2 Doug at 523.

 Gluc v Klein, 226 Mich 175, 177-178; 197 NW 691 (1924).

 In re Scheyer’s Estate, 336 Mich at 651-652.

 Beecher v Common Council of Detroit, 114 Mich 228, 230; 72 NW 206 (1897).

 In re High, 2 Doug 523-524 (“The question of domicile, is then, a question of fact and intent, and if these elements are found, the reference of the domicile to one place or another depends upon the comparative weight of the circumstances.”).

 For reasons we explain later in this opinion, the Child Custody Act, MCL 722.21 et seq., which governs the creation of child custody orders, does not abrogate the common-law rule that a person can have only a single domicile and does not create a dual-domicile situation.

 This Court has acknowledged that the no-fault act is modeled after the Uniform Motor Vehicle Reparations Act, see MacDonald v State Farm Mut Ins Co, 419 Mich 146, 151; 350 NW2d 233 (1984). Section 1(a)(3)(ii) of 14 ULA, Civil Procedural and Remedial Laws, Uniform Motor Vehicle Accident Reparations Act, p 43, includes those “residing in the same household with a named insured” within the definition of “basic reparation insured,” of whom are eligible for benefits. See id. at § 4(b), p 56. In other words, under the model act, a person need only reside in the same household as the policy holder to be considered a basic reparation insured who may claim benefits against the policyholder’s insurance company. Id. at 57.

 Workman, 404 Mich at 495-496.

 Id. at 496-497 (citations omitted). Later, in Dairyland Ins Co v Auto-Owners Ins Co, 123 Mich App at 682, the Court of Appeals added five more factors relevant for determining no-fault domicile, with a particular focus on adult children of an insured who may have complicated living arrangements:
*498 Other relevant indicia of domicile include such factors as [1] whether the claimant continues to use his parents’ home as his mailing address, [2] whether he maintains some possessions with his parents, [3] whether he uses his parents’ address on his driver’s license or other documents, [4] whether a room is maintained for the claimant at the parents’ home, and [5] whether the claimant is dependent upon the parents for support.
The Workman-Dairyland multifactored framework comprises the one now commonly employed by Michigan courts when a question of fact exists as to where a person is domiciled.

 Workman, 404 Mich at 495 (second emphasis added). In support of the statement, “the terms ‘domicile’ and ‘residence’ are legally synonymous,” Workman provides the following in footnote 4, id. at 495 n 4:
Gluc v Klein, 226 Mich 175, 178; 197 NW 691 (1924); Hartzler v Radeka, 265 Mich 451, 452; 251 NW 554 (1933); Reaume & Silloway, Inc v Tetzlaff, 315 Mich 95; 23 NW2d 219 (1946). For an example of such a “special circumstance”, see School District No 1, Fractional, of Mancelona Twp v School District No 1 of Custer Twp, 236 Mich 677, 681; 211 NW 60 (1926); Ortman v Miller, 33 Mich App 451, 458; 190 NW2d 242 (1971).

 Gluc, 226 Mich at 175, 178.

 Hartzler, 265 Mich at 451, 452.

 Reaume & Silloway, Inc, 315 Mich at 95, 99.

 See Sch Dist No 1 Fractional of Mancelona Twp, 236 Mich at 681 (concluding that the Legislature, in the context of a school statute, intended to give the terms “residence” and “domicile” their traditional, distinctive common-law meanings); and Ortman, 33 Mich App at 458 (reaching the same conclusion in the context of a motor vehicle accident claims fund statute).

 Similarly, see Feaster v Portage Pub Sch, 451 Mich 351, 356; 547 NW2d 328 (1996) (quoting Feaster v Portage Pub Sch, 210 Mich App 643, 657; 534 NW2d 242 (1995), rev’d 451 Mich 351 (1996), in turn citing Sch Dist No 1 Fractional of Mancelona Twp, 236 Mich at 681-682), where this Court more recently reasserted the legal difference between the terms “domicile” and “residence” in the context of applying school statutes to minor children, concluding that “[i]t is well established that residency for educational purposes is not the equivalent of legal domicile.” Likewise, construing “domicile” and “residence” as synonymous under the no-fault act would entirely defeat the specific legislative choice to employ the more restrictive term “domiciled” in place of broader term “resided.”

 For this same reason, Farm Bureau’s suggestion that this Court follow the holding of a Sixth Circuit Court of Appeals case, Walbro Corp v Amerisure Cos, 133 F3d 961 (CA 6, 1988), is unavailing. In Walbro, the Sixth Circuit interpreted Workman to permit dual domiciles where the minor child had a legal residence with both parents as a result of a joint legal and physical custody order. Aside from its lack of any precedential value, Walbro misconstrued Workman and the statutory language of MCL *501 500.3114(1) in the same manner as the Court of Appeals in Grange as permitting a person to have more than one domicile at a given point in time. Walbro also wrongly applied, for reasons we explain later in this opinion, the Workman domicile factors to determine the child’s domicile.

 8 Mich Civ Jur, Domicile, § 1.

 See In re High, 2 Doug at 523-524.

 Restatement, Conflict of Laws, 2d, §§ 22, 23; 8 Mich Civ Jur, Domicile, § 5.

 Comments a and b of the Restatement, § 15 provide:
a. Requirements for acquisition of domicil of choice. The requirements for acquiring a domicil of choice are (1) legal capacity to do so, (2) physical presence as described in § 16 and (3) the existence of the attitude of mind described in § 18 toward the place in question....
b. A person may acquire a domicil of choice if
(1) having had a domicil by operation of law, such as a domicil of origin, he acquires a domicil of choice in a place other than his former domicil; or
(2) having had a domicil of choice in one place, he acquires a new domicil of choice in another place. [Emphasis added.]

 See id. It is basic black letter law that an unemancipated minor lacks the legal capacity to acquire a domicile of choice. See Yarborough v Yarborough, 290 US 202, 211; 54 S Ct 181; 78 L Ed 269 (1933) (“[Minor child] was not capable by her own act of changing her domicile.”); Miss Band of Choctaw Indians v Holy field, 490 US 30, 48; 109 S Ct 1597; 104 L Ed 2d 29 (1989) (“[M]ost minors are legally incapable of forming the requisite intent to establish a domicile . ...”). Our Legislature has recognized that unemancipated minors lack the necessary legal capacity to acquire a domicile of choice by expressly granting emancipated minors “the right to establish a separate domicile.” MCL 722.4e(1)(d).

 See Holy field, 490 US at 48 (“[Generally, a child’s] domicile is determined by that of their parents.”); see also Lamar v Micou, 112 US 452, 470; 5 S Ct 221; 28 L Ed 751 (1884) (stating the general rule that the domicile of an infant follows that of his father).

 See In re High, 2 Doug at 523-524 (recognizing that a child acquires a domicile of origin upon birth that is the same as his parents); Hering v Mosher, 144 Mich 152, 154; 107 NW 907 (1906) (noting that a child’s domicile of origin is the same as his father’s domicile).

 See In re High, 2 Doug at 524 (explaining that a child who “was bom in Vermont, about the year 1812, where he continued to reside with his parents, who were domiciled there, until he went south some time prior to *504 1832, and before he had attained the age of twenty-one[,]” was domiciled in Vermont, as “Vermont, then, was the domicile of his birth or nativity ... and it continued to be his domicile until he acquired another, which he could not do until he arrived at foil age....” [emphasis added]). Indeed, in the instance where a child’s parents remain married, when the parents acquire a new domicile of choice, the child also acquires that same domicile consistent with the parents’ intent. Under these circumstances, because the child’s domicile is determined in relation to his parents’ domicile, the Workman factors remain relevant only to the extent that they are used to determine the parents’ intentions. See Holyfield, 490 US at 48.

 In re Volk, 254 Mich 25; 235 NW 854 (1931), overruled in part on other grounds by Hentz v Hentz, 371 Mich 335 (1963).

 In re Volk at 31-32 (emphasis added).

 The United States Supreme Court recognized the same principle in Yarborough, 290 US at 211, when it indicated that the child’s “domicile *505 continued to be [the same as her father’s] until entry of the [divorce] judgment in question [which granted the mother custody of the child].” Likewise, the Restatement, § 22, comment d states in part, “A child’s domicil, in the case of the divorce or separation of his parents, is the same as that of the parent to whose custody he has been legally given.”

 In re Volk, 254 Mich at 31-32. Similarly, and more recently, in Vanguard Ins Co v Racine, 224 Mich App 229, 233; 568 NW2d 156 (1997), the Court of Appeals noted that a party has only one domicile, and, in the case of a minor child of divorced parents, the one domicile would be that parent’s home where the minor “spent the majority of his time and where [the parent] had physical custody . .. under the divorce judgment.” (Emphasis added.)

 In an effort to avoid creating a two-domicile situation under its rebuttable presumption test, i.e., the concurrence would allow a child to have one domicile for purposes of the no-fault act and another different domicile in the family law context, the concurrence argues that the family court lacks the authority to determine a minor child’s domicile in its custody orders. This position, however, conflicts with the concurrence’s rebuttable presumption test, which recognizes the family court’s authority in this regard by treating the custody order as presumptive evidence of a minor child’s domicile.

 Child Custody Act, MCL 722.21 et seq.

 MCL 722.26.

 MCL 722.24(1).

 See MCL 722.31, which pertains to the requirements necessary to change a child’s residence, and provides in part that “[a] child whose parental custody is governed by court order has, for the purposes of this section, a legal residence with each parent.” Notably, the caselaw addressing disputes related to motions for a change of residency also interchangeably describe these motions as motions for a change of domicile. See Rains v Rains, 301 Mich App 313; _ NW2d _ (2013); McKimmy v Melling, 291 Mich App 577, 580-582; 805 NW2d 615 (2011). The courts loose use of the terms “residency” and “domicile” in the context of motions to change residency under MCL 722.31, however, has no impact on the Legislature’s express decision to use the term “residence,” as opposed to domicile, and does not inform the meaning of the Child Custody Act.

 See Const 1963, art 3, § 7 (indicating that the common law remains in force until it is “changed, amended or repealed”); see also Dawe v Dr Reuven Bar-Levav & Assocs, PC, 485 Mich 20, 28; 780 NW2d 272 (2010) (“[T]he Legislature ‘should speak in no uncertain terms’ when it exercises its authority to modify the common law.”).

 For example, MCL 722.26a recognizes the possibility of “joint custody,” which may consist of either joint physical custody or joint legal custody or both joint physical and legal custody. MCL 722.26a(7) defines “joint custody” to mean
an order of the court in which 1 or both of the following is specified:
(a) That the child shall reside alternately for specific periods with each of the parents.
(b) That the parents shall share decision-making authority as to the important decisions affecting the welfare of the child.
“Although not specifically designated in the statute, the custody described in [MCL 722.26a(7)(a)] is commonly referred to as joint physical custody, and that described in [MCL 722.26a(7)(b)] is referred to as joint legal custody.” Dailey v Kloenhamer, 291 Mich App 660, 670; 811 NW2d 501 (2011).

 See Harvey v Harvey, 470 Mich 186, 194; 680 NW2d 835 (2004) (indicating that custody orders are binding once entered by court order); Brausch v Brausch, 283 Mich App 339, 354; 770 NW2d 77 (2009) (indicating that a family court’s custody order is valid and binding for all purposes until properly set aside or otherwise modified).

 See MCL 722.27(1)(c), which indicates that a family court may “modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances until the child reaches 18 years of age .. . [and that the] court shall not. .. change the established custodial environment of a child unless there is presented clear and convincing evidence that-it is in the best interest of the child.”

 See MCL 722.31, which provides in relevant part:
(1) A child whose parental custody is governed by court order has, for the purposes of this section, a legal residence with each parent. Except as otherwise provided in this section, a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location that is more than 100 miles from the child’s legal residence at the time of the commencement of the action in which the order is issued.
(2) A parent’s change of a child’s legal residence is not restricted by subsection (1) if the other parent consents to, or if the court, after complying with subsection (4), permits, the residence change. This section does not apply if the order governing the child’s custody grants sole legal custody to 1 of the child’s parents.
See also MCR 3.211(C)(3), which provides:
A judgment or order awarding custody of a minor must provide that
*510 (1) the domicile or residence of the minor may not be moved from Michigan without the approval of the judge who awarded custody or the judge’s successor,* * *
(3) a parent whose custody or parenting time of a child is governed by the order shall not change the legal residence of the child except in compliance with section 11 of the Child Custody Act, MCL 722.31.

 The concurrence' acknowledges that parents are legally bound by custody orders, but then concludes that parents retain the ability to establish a minor child’s domicile in contravention of a custody order. This reasoning — and the rebuttable presumption test that stems from it — departs from established principles of Michigan’s domiciliary common law and statutory law and, instead, is based on the concern that domicile dictated by a custody order may not be aligned with the minor child’s actual living arrangements. This approach is not supportable in our law and we decline to give legal effect to the fact that a child’s living situation may not be consistent with the custody order.

 We recognize that parents often reach informal agreements concerning custody matters or, having established a formal arrangement through court order, may through mutual agreement decide to deviate from that arrangement such that a child’s living situation is not aligned with the custody order. Our holding does not, in reality, restrict parents in their ability to address custody arrangements in these regards, but courts should be cognizant that parents’ informal modifications to the custody arrangement established in a custody order have no effect on a child’s domicile.

 Despite this clear directive, the concurrence argues that our holding injects uncertainty into the realm of no-fault law. We believe that it is the concurrence’s rebuttable presumption test that would create uncertainty because it would require insurers to evaluate parents’ claims of domicile or leave an insurer guessing regarding its risk of exposure to liability.

 A domicile set by operation of law — for example, by court order— obviates the need to engage in an analysis of the Workman-Dairyland factors, which were designed to help determine a person’s domicile when it was an open or contested question.

 Compare MCL 722.26a(7)(a) (physical custody) with MCL 722.26a(7)(b) (legal custody).

 See In re Volk, 254 Mich at 31-32, which determined that a child’s domicile was with that parent who had been given physical custody of the child.

 We recognize that a custody order may allow for reasonable or flexible parenting time. However, the physical-custody inquiry, which governs the domicile determination, has to do with the child’s primary physical location under the express terms of the custody order and not with how the order allots “parenting time.” Indeed, by allowing for reasonable or flexible parenting time in a custody order, a family court has not relinquished its authority to establish the physical custody of the minor child.

 Although not presently before this Court, we recognize that determining domicile by reference to a custody order may appear to lead to a perplexing result where the order grants each parent joint physical custody under MCL 722.26a(7) and creates an equal 50/50 division of physical custody. To begin with, we emphasize that an award of joint physical custody alone does not automatically create this potentially perplexing situation because although an order may award joint physical custody, it may also establish that one parent has primary physical custody. Alternatively, the details of the physical custody division may reveal that one parent has physical custody of the child more often than the other parent despite the joint physical custody arrangement. Thus, it is only in the very rare event that a custody order awards joint physical custody and grants both parents an equal amount of time to exercise physical custody that this issue arises. Indeed, MCL 722.26a(7) does not require that parents share equal physical custodial time for a court to award joint physical custody; rather, [MCL 722.26a(7)(a)] merely defines joint physical custody as an order “[t]hat the child shall reside alternately for specific periods with each of the parents.” Emphasis added. The statute does not, however, require that the child reside with each parent for an equal amount of time to constitute joint physical custody.
*513 In the unusual event that a custody order does grant an equal division of physical custody, and only in this instance, then the child’s domicile would alternate between the parents so as to he the same as that of the parent with whom he is living at the time. Restatement, § 22 (1971). Thus, the child’s domicile is with the parent who has physical custody as established by the custody order at the specific time of the incident at issue. This approach is consistent with the terms of the custody order and avoids a finding that the child has dual coexisting domiciles. Such a rule is consistent with In re Volk and retains our traditional understanding that a person can only have one domicile at a time.

 Given our holding that a custody determination of a minor child governs domicile, Farm Bureau’s argument that Grange’s policy conflicts with the no-fault act is unavailing. Recall that the pertinent portion of Grange’s policy states: “If a court has adjudicated that one parent is the custodial parent, that adjudication shall be conclusive with respect to the minor child’s principal residence.” This provision is plainly consistent with our holding and does not, as the Court of Appeals held, restrict coverage that otherwise would have been permitted under the no-fault act.