*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAGANNATHAN NEUROSURGICAL
INSTITUTE, PLLC, and MARLENE HOLBROOK,

UNPUBLISHED
July 15, 2021

Plaintiffs-Appellants,

v

No. 353776
Oakland Circuit Court
LC No. 2019-175627-NF

GEICO INDEMNITY COMPANY and GEICO
GENERAL INSURANCE COMPANY,

Defendants-Appellees.

Before: RIORDAN, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Plaintiff, Jagannathan Neurosurgical Institute, PLLC,[1] appeals as of right the trial court order granting defendants' motion for summary disposition. We affirm for the reasons stated in this opinion.

## I. BASIC FACTS

Marlene Holbrook and William Holbrook (the Holbrooks) purchased a house in Michigan in 2017. William drove to the Michigan home in November 2018, transporting many of the Holbrooks' belongings. He stated that his intent at that point was to make the Michigan home his residence. A few days to a week after William drove to Michigan, Marlene took a one-way flight to Michigan. She also intended to remain in Michigan and not return to live in Florida. William picked Marlene up at the airport. On the way from the airport to the Michigan home, the Holbrooks were involved in a car crash, and Marlene was injured.

---

[1] The Jagannathan Neurosurgical Institute, PLLC, is the assignee of Marlene Holbrook. For ease of reference, we will refer to the Jagannathan Neurosurgical Institute, PLLC, as plaintiff, and refer Marlene Holbrook by her name.

William was driving and owned the car involved in the crash. The Holbrooks were covered by a Florida auto insurance plan issued by defendants, with a $10,000 per person personal injury protection limit. After the crash, Marlene was billed for more than $10,000 in medical care, some of which was provided by plaintiff. Plaintiff sued when defendants refused to cover all of Marlene's care. The trial court granted defendants' motion for summary disposition and dismissed the case, finding that there was no genuine issue of material fact on the dispositive question of whether the Holbrooks were domiciled in Michigan.

## II. DOMICILE

### A. STANDARD OF REVIEW

On appeal, plaintiff argues that the trial court erred by granting summary disposition because there is evidence William was still domiciled in Florida at the time of the accident. This Court reviews de novo the trial court's decision on a motion for summary disposition. *State Farm Fire & Cas Co v Corby Energy Servs, Inc*, 271 Mich App 480, 482; 722 NW2d 906 (2006). The court granted summary disposition under MCR 2.116(C)(10). A motion for summary disposition made under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). The court considers all affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*. Summary disposition should be granted when the evidence reveals no genuine issue of material fact. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). "A domicile determination is generally a question of fact; however, where the underlying material facts are not in dispute, the determination of domicile is a question of law for the circuit court." *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 490; 835 NW2d 363 (2013).

### B. ANALYSIS

At the time of the Holbrooks' motor-vehicle crash, the former MCL 500.3163(1) read:

> (1) An insurer authorized to transact automobile liability insurance and personal and property protection insurance in this state shall file and maintain a written certification that any accidental bodily injury or property damage occurring in this state arising from the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle by an out-of-state resident who is insured under its automobile liability insurance policies, is subject to the personal and property protection insurance system under this act. [MCL 500.3163(1), as amended by 2002 PA 697.]

Although the terms "residence" and "domicile" are sometimes used interchangeably, see *Grange Ins Co of Mich*, 494 Mich at 498-499, and although former MCL 500.3163 uses the phrase "out-of-state resident" and does not expressly reference domicile, the parties argue that the dispositive issue is whether William—the owner and operator of the vehicle involved in the accident—was domiciled in Michigan at the time of the accident.

In *Grange*, Michigan Supreme Court explained that:

> For over 165 year, Michigan courts have defined "domicile" to mean "the place where a person has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning." Similarly, a person's domicile has been defined to be "that place where a person has voluntarily fixed his abode not for a mere special or temporary purpose, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time." [*Grange*, 494 Mich at 493 (quotation marks and citation omitted).]

"[D]omicile is acquired by the combination of residence and the intention to reside in a given place . . . . If the intention of permanently residing in a place exists, a residence in pursuance of that intention, however short, will establish a domicile." *Id.* at 495 (citation and quotation marks omitted). The inquiry "is generally a question of intent, but also considers all the facts and circumstances taken together." *Id.* A person may only have one domicile at any time. *Id.* at 494.

Here, even viewed in the light most favorable to plaintiff, it is clear that William was domiciled in Michigan at the time of the car crash. The Holbrooks' purchased the Michigan house in 2017, and their testimony reflects their intent to make that home their permanent home. Both had family close to the Michigan home, including a grandchild and a great-grandchild with whom Marlene wanted to have a closer relationship. The Holbrooks sold their Florida home in anticipation of their move. However, because of pending litigation and Marlene's medical issues, they purchased another house in Florida. Then, in November 2018, William drove to Michigan with a number of their belongings. He testified that his intent at that point was to live in Michigan and not return to Florida. A few days to a week after he left, Marlene took a one-way flight to Michigan. It is undisputed that she intended to live in Michigan permanently and not return to the Florida home. The record also reflects that Marlene was disabled and William had been trained to provide her with fulltime care. After she arrived in Michigan, William continued to provide her with that care, and the record is devoid of any evidence suggesting that anyone else was retained to provide that care in his absence. Although William also intended to return to the Florida home, the Holbrooks's testimony shows that the purpose of the trip was to prepare the home for sale and move more of their personal belongings from Florida to Michigan. Finally, the record shows that before Marlene flew to Michigan, the Holbrooks completed change-of-address forms with the post office and updated their address with their bank to reflect their Michigan address.

It is true that, at the time of the accident, the Holbrooks still had some property, including two large trailers mostly full of William's "equipment," at their Florida home. They also still owned the Florida home and had a Florida automobile insurance policy. William also had a Florida driver's license. Yet, the fact that the Holbrooks owned a home in Florida and had property at that home, is not reflective of William's intent to reside permanently or indefinitely in Florida because the uncontradicted evidence shows that the Florida home was purchased as a temporary residence while the Holbrooks prepared for their intended permanent move to Michigan. Furthermore, although plaintiff asserts that William returned to Florida after the accident and that he lived there until the Florida home sold, there is nothing to support that assertion. Instead, the evidence reflects that after the crash, William continued to reside in Michigan with his disabled wife, providing her with fulltime care. He then made one or two trips to the Florida home to conduct some "repairs"

before the sale of the home was finalized and to transport more personal belongings from the Florida home to the Michigan home. Taking a trip from Michigan to Florida to retrieve belongings and to finalize the sale of the Florida home is not reflective of an intent to reside indefinitely in Florida. Moreover, even if the evidence showed that immediately after the crash, William left his wife in Michigan and returned to live in the Florida home, the record does not support that he did so on an indefinite basis. An indefinite period of time is one that lasts for an unknown or unstated length of time. Here, the uncontradicted testimony reflects that any trip William made from Michigan to Florida was for a definite period of time, i.e., until the house sale was finalized.

Because there is no underlying factual dispute, and because, viewing the evidence in the light most favorable to plaintiff, reasonable minds could not differ regarding whether William was domiciled in Michigan at the time of the accident, there is no genuine issue of material fact on this dispositive issue. The trial court did not err by granting summary disposition.

Affirmed. Defendants may tax costs as the prevailing parties. MCR 7.219(A).

/s/ Michael J. Riordan
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro