*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ALVIN LEONARD SMITH,

Plaintiff-Appellant,

v

PROGRESSIVE MARATHON INSURANCE
COMPANY and AGIM GOCAJ,

Defendants-Appellees.

UNPUBLISHED
July 2, 2020

No. 345800
Wayne Circuit Court
LC No. 17-011817-NF

Before: GLEICHER, P.J., and SAWYER and METER, JJ.

PER CURIAM.

The trial court granted summary disposition in favor of defendants on plaintiff's claims arising out of a motor vehicle accident. We reverse and remand.

Plaintiff was involved in a motor vehicle accident when the vehicle he was driving, a 2000 Ford Explorer, collided with a vehicle driven by defendant Gocaj. Plaintiff maintains that he was injured as a result of the accident, that he has incurred medical expenses and wage loss as a result, and that Gocaj was at fault in the accident. Plaintiff owned the Ford Explorer; it was insured by defendant Progressive under an automobile policy issued to plaintiff's mother, Barbara Smith. Smith was identified on the policy as the named insured, with plaintiff being listed under "Drivers and Household Residents."

One week after the accident, plaintiff applied for personal protection insurance (PIP) benefits through the Michigan Assigned Claims Facility. Progressive was listed on the claim form as the insurer of plaintiff's vehicle and the claim was forwarded to Progressive for payment. After Progressive did not pay benefits, this action was commenced. In addition to claiming PIP benefits, plaintiff claimed benefits under the underinsured/uninsured motorist coverage of the Progressive policy.[1]

---

[1] Plaintiff had also commenced a tort claim against Gocaj, claiming that Gocaj was negligent in causing the accident and that plaintiff had suffered a serious impairment of body function.

-1-

Progressive sought dismissal on two separate grounds. First, because the insurance policy was in the name of Smith and not plaintiff, Progressive did not personally maintain no-fault insurance on the vehicle.[2] This was also the basis for the trial court's dismissal of the tort claim against Gocaj on the basis that plaintiff had failed to maintain the required insurance and was thus precluded from seeking a tort recovery against an at-fault driver.[3] Second, because plaintiff was neither a named insured on the policy nor a resident relative in Smith's household, he was therefore not entitled to benefits under his mother's policy. The trial court agreed on both counts and dismissed the case. This appeal followed.

This first issue is easily handled. At the time of the summary disposition, the issue was controlled by this Court's decision in *Barnes v Farmers Ins Exchange*, 308 Mich App 1; 862 NW2d 681(2014). In *Barnes*, this Court concluded that, in order to meet the obligation under the No-Fault Act to maintain insurance coverage, the owner of a vehicle had to personally maintain the insurance. That is, it was insufficient for a vehicle to be insured under a policy issued to a non-owner. Thus, recovery of PIP benefits or the maintaining of a tort claim would be precluded under such a situation. But, while this case was pending on appeal, the Michigan Supreme Court overruled the holding in *Barnes*. *Dye v Esurance Property & Casualty Ins Co*, 504 Mich 167; 934 NW2d 674 (2019). The Court in *Dye* concluded that a vehicle owner's statutory obligation to maintain insurance on the vehicle does not require that the owner personally procure the insurance. Rather, that obligation may be satisfied by a third-party obtaining the insurance, such as the father in *Dye* or the mother in this case. *Id*. at 188. Progressive concedes that its argument under *Barnes* is no longer viable.[4]

But that does not resolve the second issue, whether there is a genuine issue of material fact regarding whether plaintiff is domiciled with his mother and, therefore, is covered under the Progressive policy. We have two primary problems with Progressive's argument that it is entitled to summary disposition. First, we agree with plaintiff that Progressive, and by extension the trial court, conflated the concepts of "residency" and "domicile". Second, we believe that Progressive puts undue weight on plaintiff's supposed "admission" in his deposition that he was domiciled with his girlfriend at the time of the accident.

Under MCL 500.3114(1), "a personal protection insurance policy described in section 3101(1) applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident." The named insured in the Progressive policy is plaintiff's mother.[5] It is not disputed

---

[2] See MCL 500.3113(b).

[3] See MCL 500.3135(2)(c).

[4] This also requires a determination that the trial court erred in dismissing plaintiff's tort claim against Gocaj.

[5] We note that the statute does not use the term "named insured." Rather, it only refers to a "person named in the policy . . . ." Plaintiff, while not designated a "named insured" in the policy, is "named in the policy" as an additional driver. While this poses an interesting question, it is not one that we need determine at this time.

that plaintiff is a relative, but it is disputed whether he was domiciled with her at the time of the accident. This brings us to our Supreme Court's decision in *Grange Ins Co of Mich v Lawrence*, 494 Mich 475; 835 NW2d 363 (2013). *Grange* involved a motor vehicle accident in which a minor child was fatally injured. The child's parents were divorced and each parent had no-fault insurance policies from different insurers, Grange and Farm Bureau. The trial court had concluded that the child was domiciled with both parents and, therefore, both insurers were at an equal level of priority for the payment of PIP benefits. This Court affirmed. 494 Mich at 484-485.[6]

Initially, *Grange* discussed the standards of review applicable to the issues in this case:

> This Court reviews de novo a decision to grant or deny a motion for summary disposition. Summary disposition under MCR 2.116(C)(10) is appropriately granted where no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law. A domicile determination is generally a question of fact; however, where the underlying material facts are not in dispute, the determination of domicile is a question of law for the circuit court. We likewise review de novo issues of statutory interpretation. [*Grange*, 494 Mich at 489-490.]

*Grange* established two important points relevant to this case: (1) that domicile is different than residence and (2) that while a person may have more than one residence, he or she only has one domicile at any given time. 494 Mich at 494. The trial court failed to recognize this distinction. In ruling on the motion for summary disposition, the trial court only addressed the question of residency:

> So even if we assume that he is—even if we assume there's coverage for him if he was living at this address on the date and time of the accident, his own testimony during the course of the deposition says he wasn't living with his mom. He was residing with his girlfriend in Westland. That precludes him from coverage. That's exactly what happened. That's it. Matter of law.
>
> Motion is granted.

Ultimately, the trial court answered the wrong question. It does not matter where plaintiff was "living" or whether he was "residing with his girlfriend." Rather, it matters where he was domiciled.

As the Court explained in *Grange*:

> For over 165 years, Michigan courts have defined "domicile" to mean "the place where a person has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning." Similarly, a person's domicile has been defined to be " 'that place

---

[6] There was a companion case, *Automobile Club Ins Ass'n v State Farm Mut Automobile Ins Co*. Although there were similar facts, the companion case addressed whether the question of domicile was to be resolved by reference to the provisions of the divorce judgment. 494 Mich at 489.

where a person has voluntarily fixed his abode not for a mere special or temporary purpose, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time.' " In this regard, the Court has recognized that "[i]t may be laid down as a settled maxim that every man must have such a national domicile somewhere. It is equally well settled *that no person can have more than one such domicile, at one and the same time.*" From this settled principle, it follows that

> a man retains his domicile of origin [upon his birth] until he changes it, by acquiring another; and so each successive domicile continues, until changed by acquiring another. And it is equally obvious that the acquisition of a new domicile does, at the same instant, terminate the preceding one.

In this way, our common law has recognized that from the time of a person's birth—from childhood through adulthood—a person can only have a single domicile at any given point in time. Indeed, there are few legal axioms as established as the one providing that every person has a domicile, and that a person may have one—and *only* one—domicile.

> In furtherance of this understanding of domicile, the common law has necessarily distinguished between the concepts of "domicile" and "residence:"

> The former, in its ordinary acceptation, was defined to be, 'A place where a person lives or has his home,' while '[a]ny place of abode or dwelling place,' however temporary it might have been, was said to constitute a residence. A person's domicile was his legal residence or home in contemplation of law.

> Stated more succinctly, a person may have only one domicile, but more than one residence. [494 Mich at 493-494; footnotes omitted, emphasis supplied by *Grange*.]

Applying this to the current case, there would not seem to be any dispute that plaintiff had been, at least at some point prior to the accident, domiciled with his mother, the named insured. The relevant question now is not whether plaintiff, at the time of the accident, was "living" with his mother or "residing" with his girlfriend. Rather, it is whether he was now "domiciled" with his girlfriend. A change in residence does not necessarily equate to a change in domicile:

> For purposes of distinguishing "domicile" from "residence," this Court has explained that "domicile is acquired by the combination of residence and the intention to reside in a given place .... If the intention of permanently residing in a place exists, a residence in pursuance of that intention, however short, will establish a domicile." The traditional common-law inquiry into a person's "domicile," then, is generally a question of intent, but also considers all the facts and circumstances taken together. [494 Mich at 494-495.]

In his deposition, plaintiff testified that, before the accident, he had been spending some nights at his girlfriend's residence and some nights at his mother's house. He did indicate that, following the accident, he was living full time with his girlfriend. But he further explained that was due to losing his vehicle in the accident and no longer able to travel between the two residences. This

does not address the question whether there was sufficient evidence of an intent to now permanently reside with his girlfriend that he had changed his domicile so as to merit a determination that there was no genuine issue of material fact on this issue. Indeed, it does not matter whether he formed such an intent after the accident. Rather, it matters whether he formed that intent, if at all, *before* the accident because it is necessary that he had a change of domicile because it is necessary that he was domiciled with his girlfriend at the time of the accident, not afterwards.

Progressive points to various statements made by plaintiff in his deposition that support a conclusion that, at the time of the accident, he resided with his girlfriend at the duplex on Montmorency. For example, Progressive points to the fact that plaintiff's name was on the lease and contributed $150 per month towards the rent. But plaintiff also explained that his name was on the lease at the request of the landlord if plaintiff was going to be spending nights at the duplex. Progressive points to other facts that weigh in favor of concluding that plaintiff resided at the Montmorency address.[7] Plaintiff also testified to other facts that would weigh in favor of concluding that he resided with his mother.[8] And both conclusions could be correct, that he resided both with his girlfriend and with his mother because, as the Court pointed out in *Grange*, a person may reside at more than one location at the same time. Ultimately, however, we decline to resolve the question whether there is a genuine issue of material fact as to the question of domicile because the trial court did not resolve the question, instead focusing on the question of where plaintiff resided.

---

[7] Facts in favor of concluding that he was domiciled with his girlfriend on Montmorency include: in answer to whether he ever resided at Montmorency he stated that he was going back and forth, prior to the accident he stayed at Montmorency 2 nights a week and, beginning the year before the accident, his name was on the lease because the landlord requested it if he was going to be staying there 2 nights a week, at the time of the accident, plaintiff contributed $150 a month towards rent, he did not have his own key to the Dunbar house, the Montmorency address appears as his address on the police report—though he explained that is where he told the police officer he was coming from at the time of the accident, plaintiff's girlfriend had signed an affidavit that she was living with plaintiff at the Montmorency address at the time of the accident.

[8] These facts include: the address on his driver's license was his mother's house on Dunbar, that Dunbar was his current address and had been for over 20 years, he was living at Dunbar at the time of the accident, plaintiff's name was not on the utilities at the Montmorency house, the only belongings he kept at the Montmorency duplex were his clothes for a particular stay, his girlfriend supplied all of the furnishings for the Montmorency house, he received his mail at the Dunbar address, the Ford Explorer was registered at the Dunbar address, prior to the accident he did not have a key to the Montmorency house, his bank statement was sent to the Dunbar address, he kept clothing at Dunbar and had his own room, prior to the accident he would give Dunbar as the address where he lived, he did not use the Montmorency address on any "paperwork" before the accident.

There is one point, however, raised by Progressive that we do wish to address in some detail because not only does Progressive place great reliance on this point, so did the trial court and, if we were to agree with Progressive, it would resolve the matter. Progressive argues that the following exchange between Progressive's attorney and plaintiff at plaintiff's deposition constitutes an "admission" by plaintiff that he was domiciled at the Montmorency address at the time of the accident:

Q. Looking at the first page, the application asks for your current address, and you indicate the Montmorency residence; correct?

A. Yes.

Q. The next question asks your address on the date of the accident, and your response is "same as above," meaning the Montmorency address; correct?

A. Yes.

Q. Okay. So I'm going to ask you one more time, and I'm going to remind you you're under oath, where were you living at the time of the November 3rd, 2016 accident, what was your domicile, was it Montmorency or was it Dunbar?

A. At that time I was at the Montmorency.

It is the last question and answer that Progressive argues constitutes an "admission". We are not so persuaded. As we have discussed at some length, "domicile" holds a special meaning in the law. Indeed, in *Grange*, not only did the Supreme Court spend considerable time discussing the meaning of that term, it also concluded that both this Court and the trial court in that case misinterpreted the term. Yet Progressive would have us conclude that plaintiff, who has no legal education,[9] could accurately answer the question of what was his domicile without even being given a definition or context. Indeed, the limited context that was given in the question was erroneous. That is, it was a compound question that linked "where were you living" with "what was your domicile," suggesting that the two concepts are the same. And, as we've discussed at length, they are not. This exchange is hardly an admission of domicile. At best, it is one fact of many regarding where he was residing at the time of the accident. Ultimately, defendant overlooks the fact that the purpose of the deposition was not to obtain plaintiff's legal opinions, but to suss out the facts that would potentially allow the court to decide the question of domicile.

For these reasons, we conclude that defendant was not entitled to summary disposition on the question whether it was responsible for the payment of PIP benefits. This does not, however, completely resolve the question whether plaintiff can recover uninsured motorist benefits if he can establish Gocaj's negligence in causing the accident. Because these benefits are not part of the PIP benefits under MCL 500.3114, we must look to the policy itself.

The trial court provided little analysis. Without providing any analysis of the factors involved in determining "residency," the trial court merely concluded that "his own testimony during the course of the deposition says he wasn't living with his mom. He was residing with his

---

[9] Plaintiff testified in his deposition that his highest level of education was a high school diploma.

girlfriend in Westland." But, as discussed above, plaintiff's testimony indicated that he was "living with" both his mother and his girlfriend at the time of the accident. Moreover, the conclusion that he was residing with his girlfriend, even if accurate, is insufficient to address plaintiff's argument that he may have had two residences, with both his mother and his girlfriend.

The lack of any meaningful analysis by the trial court is itself sufficient to reverse on this issue as well. But even looking to Progressive's brief on appeal, although somewhat more detailed than the trial court's opinion, provides little basis to uphold a grant of summary disposition. It reiterates a few points which might support, but does not compel, a conclusion that plaintiff resided with his girlfriend. But it does little to address the question whether he also resided with his mother.

Simply put, more analysis needs to be done on this point. And that analysis needs to start in the trial court.

The trial court's grant of summary disposition in favor of defendants is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff may tax costs.

/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ Patrick M. Meter