*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

MICHIGAN AMBULATORY SURGICAL
CENTER and PHASE ONE REHAB, Assignees of
JAMERESHA CAMPBELL,

      Plaintiffs-Appellants,

v

PROGRESSIVE MARATHON INSURANCE
COMPANY,

      Defendant-Appellee.

UNPUBLISHED
May 18, 2026
1:44 PM

No. 373314
Macomb Circuit Court
LC No. 2023-001854-NF

---

Before: WALLACE, P.J., and GARRETT and ACKERMAN, JJ.

PER CURIAM.

This action to recover personal protection insurance (PIP) benefits was brought by plaintiffs Michigan Ambulatory Surgical Center and Phase One Rehab, alleging that they provided treatment to a patient, Jameresha Campbell,[1] arising out of a July 2021 motor vehicle accident and that defendant Progressive Marathon Insurance Company (Progressive) was the no-fault insurance carrier responsible for payment of those expenses. Defendant moved the trial court for summary disposition because Campbell was not a named insured on the subject policy of insurance, a fact not disputed by plaintiffs, and because Campbell was also not a resident relative under the policy because the named insured, Cindy Wells[2] testified that she was not living with Campbell at the time of the accident, i.e., she was not domiciled at the Redford address at that time. Plaintiffs

---

[1] We note that, during an examination under oath (EUO) conducted by defendant, plaintiffs' patient testified that her last name is spelled Camp-Bell; however, because her name is spelled Campbell throughout the lower court record, and because she is not a party in this case, we will refer to her as Campbell in order to avoid confusion.

[2] The parties indicate that Wells's last name at the inception of the policy was Campbell, but that she subsequently changed her name. In this opinion, again to avoid confusion, we will refer to her as Wells.

argued that a question of fact remained on the issue of domicile because Campbell testified under oath that Wells lived with her at the time of the accident, at an address in Redford, and because the declaration page of Wells's policy (the policy) likewise listed the Redford address. The trial court granted summary disposition to defendant. On appeal, plaintiffs argue that Campbell's deposition testimony, the insurance policy, and Wells's deposition testimony all create a genuine issue of material fact on the issue of domicile in this matter, and that the trial court therefore erred in its ruling. We agree. We reverse the order granting summary disposition and remand to the trial court.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiffs filed a complaint in June 2023 in Macomb County Circuit Court alleging in relevant part, that: they provided medical treatment to Campbell arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle; defendant was the no-fault insurance carrier that was first in order of priority for payment of those expenses pursuant to the no-fault act; they had standing to pursue claims for these expenses under MCL 500.3112; and defendant failed to issue payment in contradiction of the subject insurance contract and the Michigan no-fault act. MCL 500.3101 *et seq*.

Defendant answered the complaint and filed various affirmative defenses, including that Campbell was not a named insured or resident relative under the subject policy of insurance and that she failed to prove that she was entitled to claim benefits under the no-fault act's order of priority statutes, including MCL 500.3114 and MCL 500.3115.[3]

Campbell also filed a lawsuit against defendant and other parties, arising out of the same accident, which was litigated in the Wayne County Circuit Court (the Wayne County case).

During Wells's October 2023 deposition in the Wayne County case, she testified that she lived in Livonia with her now-husband, George, starting in 2018, but then testified that she would go back and forth between the Redford address and the Livonia address, staying two nights at one place and then the following two nights at the other, until she got married on April 2, 2021, after which time she lived exclusively with George, first in Livonia, and then at a Birmingham address starting in May 2021. She then clarified that she still stays and gets mail at the Redford address, where her mother and three of her children live, but that she no longer has a bedroom there and sleeps in her mother's bedroom. When asked what she keeps at the Redford address, she said "[e]verything from toothbrush to multiple shoes, purses, clothing, pajamas, everything." Still, she said about half of her possessions are at the Redford address and half at the other address. Wells said she still sometimes pays the rent at the Redford address, "if help is needed," but that she is

---

[3] At the time of the accident, Campbell was operating a vehicle owned by her mother's husband, George, that was insured by another no-fault carrier. However, while defendant referenced that fact in its motion for summary disposition, none of the parties argue that Campbell was covered under that policy, meaning it is irrelevant to this matter. We note that, if Campell was not entitled to receive benefits from defendant, MCL 500.3114(4) indicates that she could have claimed personal protection insurance benefits under the assigned claims plan, MCL 500.3171 through MCL 500.3175.

not responsible for paying the rent. However, when asked when her name was last listed as a tenant on the lease for the Redford house, she said 2021, i.e., the year of the subject motor vehicle accident. Wells testified that she was living at both the Redford and Livonia addresses when she purchased car insurance from defendant in 2020, but that she would definitely be with her now-husband during his "off days," which were Sunday and Monday. She was then asked who lived with her at the time she purchased the policy of insurance in 2020 and she responded Campbell, as well as three of her children. But then, contradictorily, when asked again who lived with her at that time, Wells responded, "[i]n Livonia? . . . Me and George." When asked why she listed the Redford address when she applied for the insurance policy with defendant in 2020, she said "[b]ecause I was living in both places, so I did what was on my license since I was living both places." Later in the deposition, when asked essentially the same question again, she also indicated that "all my mail" was at the Redford address and that she and George were "in the beginning stage still." She then presented her driver's license from the year of the accident, which was issued on April 19, 2021, i.e., 17 days after her marriage to George, and which listed the address in Redford. Wells testified that, prior to the accident, Campbell would assist her with activities that she could not do, such as lifting. When asked if Campbell would come to Birmingham when she needed Campbell's assistance, Wells responded "[o]r I would already be in Redford." She was asked why her application for insurance listed only two people as living at the Redford address, she responded that her three children there did not drive, seemingly indicating that she intended to reference herself and Campbell as the two residents of the Redford house. At one point in her deposition, Wells testified that her memory was "terrible" as a result of a medical episode.[4]

Neither party moved for summary disposition within the time allotted by the scheduling order in this matter, which required such motions to be heard by January 31, 2024. But on May 8, 2024, defendant filed a motion in the trial court requesting leave to file a motion for summary disposition, arguing that it had good cause for the late filing because Campbell had filed an action for PIP benefits arising out of the same policy and same accident (the Wayne County case), and that the trial court in that case recently granted Progressive's motion for summary disposition based on Wells's deposition testimony that she did not live with Campbell at the time of the accident. The trial court granted leave for defendant to file the late dispositive motion.

Defendant then moved for summary disposition under MCR 2.116(C)(10) arguing that it was not an insurance carrier within the statutory order of priority because, again, Campbell was not a named insured on Wells's policy, and she was likewise not a resident relative under the policy because Wells did not live with her at the time of the motor vehicle accident. Defendant also argued that Campbell's lawsuit against defendant in Wayne County had been dismissed for the same reason, i.e., the fact that Wells did not live with Campbell at the time of the accident meant that she was not a resident relative under the Wells's policy and defendant was not within the order of priority under MCL 500.3114 for the provision of no-fault benefits to Campbell.

Attached as an exhibit to defendant's motion was a copy of Wells's insurance policy and the declarations page dated April 1, 2021 (the policy) that was addressed to Wells at the Redford address, listed her as the only named insured, and indicated two total residents in the home.

---

[4] She also testified: "I can't even remember what I ate two days ago, so . . . ."

Defendant also attached an unsigned order granting summary disposition to defendant "for the reasons stated on the record" from the Wayne County action.

Plaintiffs responded by attaching a transcript of Campbell's EUO, in which she swore that she lived at the Redford address with Wells at the time of the accident, and argued that any conflict between the testimony of Wells and Campbell would create an issue of material fact in this matter. Plaintiffs also argued that they were not parties to the Campbell action in Wayne County Circuit Court action, so that the order did not bind the trial court in the present action.[5]

The trial court granted summary disposition. While addressing plaintiff's counsel on the record, the court explained its decision: "It sounds like there's nothing other than your client's self-serving testimony. There's no, there's no paperwork, there's no licenses that show that they both lived together on the date of the offense."

Plaintiffs then filed a motion for reconsideration, which was denied by the trial court, and this appeal followed.

## II. STANDARD OF REVIEW

Review of a trial court's decision on a motion for summary disposition is conducted de novo. *Stegall v Resource Technology Corp*, 514 Mich 327, 339; 22 NW3d 410 (2024).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10), (G)(4). [*Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).]

## III. ANALYSIS

Under MCL 500.3114(1), "a personal protection insurance policy . . . applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident."

There is no definition of the terms "domiciled" or "household" in the no-fault act. *Barnes v 21st Century Premier Ins Co*, 334 Mich App 531, 541; 965 NW2d 121 (2020). Our Supreme Court has held that "a person's domicile has been defined to be that place where a person has voluntarily fixed his abode not for a mere special or temporary purpose, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time." *Grange*

---

[5] Plaintiffs also attached a signed copy of that order.

*Ins Co of Michigan v Lawrence*, 494 Mich 475, 493; 835 NW2d 363 (quotation marks and citation omitted).

"Generally, the determination of domicile is a question of fact." *Fowler v Auto Club Ins Ass'n*, 254 Mich App 362, 364, 656 NW2d 856 (2002). However, when "the underlying facts are not in dispute, domicile is a question of law for the court." *Id*.

> The relevant factors in deciding whether a person is domiciled in the same household as the insured include: (1) the subjective or declared intent of the claimant to remain indefinitely in the insured's household, (2) the formality of the relationship between the claimant and the members of the household, (3) whether the place where the claimant lives is in the same house, within the same curtilage, or upon the same premises as the insured, and (4) the existence of another place of lodging for the person alleging domicile. [*Id*. at 364.]

> The following additional factors are also relevant in ascertaining a person's domicile:

> (1) the person's mailing address; (2) whether the person maintains possessions at the insured's home; (3) whether the insured's address appears on the person's driver's license and other documents; (4) whether a bedroom is maintained for the person at the insured's home; and (5) whether the person is dependent upon the insured for financial support or assistance. [*Williams v State Farm Mut Auto Ins Co*, 202 Mich App 491, 494-495; 509 NW2d 821 (1993).]

"All relevant factors must be considered in ascertaining domicile." *Dairyland Inc Co v Auto Owners Ins Co*, 123 Mich App 675, 681; 333 NW2d 322 (1983). That being said, "these factors should be weighed or balanced with each other because no one factor is determinative." *Fowler*, 254 Mich App at 364.

At any given time, a person can have only one domicile. *Grange*, 494 Mich at 494.

Plaintiffs argue on appeal that the evidence in this case presents a genuine issue of material fact as to whether Wells was domiciled at the Redford address on the date of the accident. Plaintiffs rely upon the testimony of Campbell, who swore that Wells lived with her at an address in Redford at the time of the accident, as well as evidence of the policy itself, which lists Wells as living at the same Redford address. In addition, although defendant relies upon the transcript of Wells's deposition, plaintiffs point to portions of the same transcript that support a finding that Wells was domiciled at the Redford address at the time of the accident, including splitting her time between the residences, keeping her belongings in Redford, receiving mail at the Redford address, and producing a driver's license issued on April 19, 2021 indicating she lived at the Redford address.

Defendant argues that Campbell's self-serving testimony cannot create a question of fact in this matter as a result of the testimony provided by Wells, who said she sometimes stayed at the Redford address, but that she lived with her husband in Birmingham at that time, relying upon the Michigan Supreme Court's order in *Fuhr v Trinity Health Corp*, 495 Mich 869; 837 NW2d 275 (2013).

We find the facts of the present case to be distinguishable from *Fuhr*. In *Scott v Harris*, 550 US 372, 380; 127 S Ct 1769; 167 L Ed 2d 686 (2007), the United States Supreme Court held that when faced with unassailable evidence, such as clear video of an event, a party's self-serving sworn testimony directly contradicting that evidence cannot by itself create a genuine issue of material fact to survive summary judgment. The Michigan Supreme Court in *Fuhr* adopted this holding from *Scott*.

In *Fuhr*, the trial court granted summary disposition of the plaintiff's Whistleblower's Protection Act (WPA) claim, finding he had not established a causal connection between his reporting of a violation to the U.S. Attorney and his termination, because the defendant provided ample evidence that it planned to discharge the plaintiff before he made that report. In a split decision, this Court reversed the trial court's order, holding that testimony provided by the plaintiff at his deposition, including testimony that his supervisor told him that he was fired for calling the U.S. Attorney, created a question of fact to be decided by the fact-finder, whereas the dissent would have affirmed. *Fuhr v Trinity Health Corp*, unpublished per curiam opinion of the Court of Appeals, issued April 16, 2013 (Docket No. 309877). But the Michigan Supreme Court reversed the judgment of this Court and reinstated the order granting summary disposition to the defendant for the reasons stated by the dissent. The dissent, which is now effectively an opinion of the Supreme Court, relied upon *Scott*, reasoning as follows:

> [P]laintiff failed to demonstrate a genuine issue of material fact because the only direct evidence of discrimination was plaintiff's self-serving deposition testimony that [his supervisor] told him he was being terminated because of his call to the U.S. Attorney. This evidence does not create a genuine issue of material fact because it is blatantly contradicted by the record so that no reasonable jury could believe it. The record demonstrates that Amy Moored was approached about her interest in plaintiff's position and informed that plaintiff would be "let go soon" during the first week of April 2010. Moreover, an email dated April 8, 2010 from the hospital's CEO to the hospital's vice president stated that plaintiff "is on the way out," and that Moored would take over plaintiff's job, and the hospital's vice president submitted an affidavit stating that the decision to terminate plaintiff was made during the first week of April 2010. Plaintiff did not contact the U.S. Attorney until April 15, 2010. Plaintiff was terminated on May 10, 2010, and following the termination meeting, plaintiff sent an email stating that he was not given a reason for his termination. Plaintiff did not claim he was fired for contacting the U.S. Attorney until he was deposed. [*Id.* (HOEKSTRA, J., dissenting), unpub op at 1-2.]

As a result of the Supreme Court's order, the dissenting opinion in *Fuhr* is a binding precedent. See *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 369; 817 NW2d 504 (2012) (an order issued by the Supreme Court that adopts a Court of Appeals dissent is a binding precedent).

In contrast to *Fuhr*, in which the defendant relied upon four separate items of evidentiary support: the testimony of a person applying for the plaintiff's job, an email between two of the defendant's executives that predated the lawsuit, an affidavit from the defendant's vice president, and the fact that the plaintiff never made the underlying allegation until his deposition, defendant in the instant case relies solely upon Wells's deposition testimony, which is inconsistent in repeatedly likewise supporting a finding that she was domiciled at the Redford address at the time

of the accident. Thus, unlike in *Fuhr*, in which the plaintiff's deposition testimony was consistently, blatantly contradicted by several separate items of evidence, plaintiff's deposition testimony is only inconsistently rebutted by certain portions of Wells's deposition testimony (and supported by others). Additionally, unlike in *Fuhr*, in which the plaintiff relied solely upon his own testimony, plaintiffs in the present matter additionally rely upon the policy of insurance (which states that Wells's address as the Redford address); portions of Wells's testimony supporting plaintiffs' argument; and the Well's driver's license (which also listed Wells's address as the Redford address). While it is true that, at some point in the deposition, Wells testified she lived exclusively with George when after they were married on April 2, 2021, she also testified that she continued to stay at the Redford address, described the belongings she kept at the Redford address as "everything," and received mail there. Additionally, she produced the above-referenced driver's license *issued* on April 19, 2021, more than two weeks *after* she married George, indicating that she lived at the Redford address. Considering all of the evidence, not only is Campbell's testimony as to domicile not "blatantly contradicted by the record," much of the record actually supports it.[6] *Fuhr* (HOEKSTRA, J., dissenting), unpub op at 1-2.

Reviewing the domicile factors likewise indicates that issues of material fact remain in this matter for the factfinder's resolution.

Certainly, there are some factors where there is only evidence weighing in favor of a finding that Wells lived at the Redford address at the time of the accident, e.g., Wells's mailing address was the Redford residence, when describing the type of possessions she keeps there Wells testified "everything," Wells's driver's license provided the Redford address, and the policy of insurance likewise stated that she lived there. *Williams*, 202 Mich App at 494-495. There was also no dispute that Wells lived at the Redford address at least part of the time.

There are also factors supporting a finding that Wells's domicile was at the Birmingham address. There is no dispute that Wells had another place of lodging other than the Redford address, i.e., the Birmingham address.[7] *Grange*, 494 Mich at 497. See also *Workman v DAIIE*, 404 Mich 477, 496-497; 274 NW2d 373 (1979). Also, the testimony of Wells suggests that her declared intent was to live with George. *Grange*, 494 Mich at 497. See also *Workman*, 404 Mich at 496.

Likewise contradictory evidence exists regarding other factors, and some relevant facts are in dispute. While there was no dispute that Wells lived at the Redford address at least part of the time, there was conflicting evidence as to how much time she spent there versus the Birmingham address. Even though portions of Wells's testimony suggest that her declared intent was to the stay with George starting in 2018, other portions of her deposition indicate that she lived at the

---

[6] We note that, even though defendant's only evidence supporting its domicile argument in this matter is Wells's deposition testimony, that testimony is not "self-serving" because it is not the testimony of one of defendant's officers, employees or agents.

[7] *Grange* resolved an ambiguity in the earlier *Workman* decision, making clear that "domicile" *is not* the equivalent of "residence" for purposes of MCL 500.3114(1). *Grange*, 494 Mich at 497-501.

Redford address during that time and was still staying there at the time of her 2023 deposition, which draws into question her subjective intent. *Grange*, 494 Mich at 497. While testimony establishes that Wells did not have her own bedroom at the Redford address, she testified that she slept in her mother's room when she was there, i.e., she slept in the same bedroom when she stayed there. *Williams*, 202 Mich App at 494-495. While there was no evidence demonstrating that the residents at the Redford address were fully dependent upon Wells, she said she sometimes pays rent there and was listed as a tenant on the lease the year of the accident, 2021.[8]

Based on the record before us, it appears that the trial court found portions of Wells's testimony to be credible, found other portions of Wells's testimony were not credible, and found Campbell's testimony was not credible. But a trial court may not make a determination regarding the parties' credibility when ruling on a motion for summary disposition. *White v Taylor Distrib Co, Inc*, 275 Mich App 615, 625; 739 NW2d 132 (2007). The court also appears to have failed to take into account other evidence, including the subject insurance policy and Wells's driver's license from the time of the accident, both of which indicate that Wells lived at the Redford address. As previously mentioned, a trial court must consider all of the evidence submitted by the parties in the light most favorable to the parties opposing the motion, which in this case was the plaintiffs. See *Maiden*, 461 Mich at 120.

As previously noted, domicile is generally a question of fact, unless the underlying facts are not in dispute." *Grange*, 494 Mich at 493; *Fowler*, 254 Mich App at 364.

In the present case, construing all of the evidence in the light most favorable to plaintiffs, we find that a genuine issue of material fact exists as to whether Campbell was a resident relative under the terms of the no-fault act at the time of the subject motor vehicle accident, i.e., whether the named insured, Wells, was domiciled with Campbell at the Redford address at the time of the accident. As a result, we reverse the trial court's order granting summary disposition to defendant and remand for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Randy J. Wallace
/s/ Kristina Robinson Garrett

---

[8] The formality of the relationships between Wells and the members of the respective households was very similar—she was closely related to all of them, being the wife of the resident of the Birmingham address and the mother of at least three of the residents and daughter of another at the Redford address. We therefore find this to be a neutral factor. See *Grange*, 494 Mich at 497.