*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHIGAN AMBULATORY SURGICAL
CENTER and PHASE ONE REHAB, Assignees of
JAMERESHA CAMPBELL,

UNPUBLISHED
May 18, 2026
1:44 PM

Plaintiffs-Appellants,

v

No. 373314
Macomb Circuit Court
LC No. 2023-001854-NF

PROGRESSIVE MARATHON INSURANCE
COMPANY,

Defendant-Appellee.

Before: WALLACE, P.J., and GARRETT and ACKERMAN, JJ.

ACKERMAN, J. (*dissenting*).

This case turns on a straightforward question: Where was Cindy Wells domiciled at the time of the July 2021 accident? The record permits only one answer: Birmingham. Wells testified unequivocally that she married her husband in April 2021, moved with him to Birmingham in May 2021, no longer lived at the Redford residence, and was living in Birmingham at the time of the accident. The evidence relied on by plaintiffs shows that Wells maintained continuing family and practical ties to Redford, but it does not show that Redford remained her true, fixed, and permanent home after her marriage and move to Birmingham. Because no reasonable factfinder could conclude on this record that Wells was domiciled in Redford in July 2021, I would affirm the trial court's grant of summary disposition. I therefore respectfully dissent.

As our Supreme Court explained in *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 493; 835 NW2d 363 (2013), "[t]he term 'domicile' . . . has a precise, technical meaning in Michigan's common law," and it must be understood according to that meaning:

> For over 165 years, Michigan Courts have defined "domicile" to mean "the place where a person has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning." Similarly, a person's domicile has been defined to be " 'that place where a person has voluntarily fixed his abode not for a mere special or temporary

-1-

purpose, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time.' " In this regard, the Court has recognized that "[i]t may be laid down as a settled maxim that every man must have such a national domicile somewhere. It is equally well settled *that no person can have more than one such domicile, at one and the same time*." [*Id*. at 493-494 (footnotes omitted; alteration in original).]

Because a person may have only one domicile, acquiring a new one terminates the preceding one. See *id*. at 494 (citation omitted) ("[A] man retains his domicile of origin [upon his birth] until he changes it, by acquiring another; and so each successive domicile continues, until changed by acquiring another.").

By contrast, a person may have more than one residence, which is defined as "any place of abode or dwelling place, however temporary it might have been." *Id*. (cleaned up). That distinction matters here. Evidence that Wells continued to visit Redford, occasionally stay overnight there, receive mail there, or keep belongings there may show that she maintained a connection to that residence. But domicile requires more. It requires both residence and the intent to make that place one's true, fixed, and permanent home. The *Grange* Court explained that

[f]or purposes of distinguishing "domicile" from "residence," this Court has explained that "domicile is acquired by the combination of residence and the intention to reside in a given place . . . . If the intention of permanently residing in a place exists, a residence in pursuance of that intention, however short, will establish a domicile." The traditional common-law inquiry into a person's "domicile," then, is generally a question of intent, but also considers all the facts and circumstances taken together. [*Id*. at 494-495 (footnotes omitted)].

Courts consider several factors when determining a person's domicile, including those set forth in *Workman v Detroit Auto Inter-Ins Exch*, 404 Mich 477; 274 NW2d 373 (1979). The *Workman* factors include: (1) "the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his 'domicile' or 'household;' " (2) "the formality or informality of the relationship between the person and the members of the household;" (3) "whether the place where the person lives is in the same house, within the same curtilage or upon the same premises," and (4) "the existence of another place of lodging by the person alleging 'residence' or 'domicile' in the household." *Id*. at 496-497 (citations omitted).

In the context of "adult children of an insured who may have complicated living arrangements," *Grange*, 494 Mich at 497 n 41, courts may also consider the related factors identified in *Dairyland Ins Co v Auto Owners Ins Co*, 123 Mich App 675; 333 NW2d 322 (1983), including:

whether the claimant continues to use his parents' home as his mailing address, whether he maintains some possessions with his parents, whether he uses his parents' address on his driver's license or other documents, whether a room is maintained for the claimant at the parents' home, and whether the claimant is dependent upon the parents for support. [*Id*. at 682.]

As the majority correctly notes, no single factor is dispositive, and the factors must be weighed together. *Fowler v Auto Club Ins Assoc*, 254 Mich App 362, 364; 656 NW2d 856 (2002). But our Supreme Court has also emphasized that "the question of intent [is] a preeminent concern in determining an adult's domicile." *Grange*, 494 Mich at 502.

In my view, Wells's testimony established that Birmingham was her domicile in July 2021. Wells testified that after marrying her husband in April 2021, she lived with him, first in Livonia and then in Birmingham beginning in May 2021. She testified that she no longer had a bedroom at the Redford home and that when she stayed there occasionally to help care for her mother, she slept in her mother's bedroom. She also testified that she was not responsible for rent at the Redford home, although she sometimes helped her family financially when assistance was needed. Most importantly, when asked where she lived at the time of the accident, Wells identified Birmingham, where she lived with her husband.

The evidence relied on by the majority does not undermine that conclusion. The majority points to Wells's continuing ties to Redford, including that she received mail there, kept belongings there, sometimes stayed overnight, and listed the Redford address on certain documents. Those facts are relevant, but they are also consistent with an adult's continuing connection to a former family home. That is especially so where close family members remained in the home and Wells occasionally stayed there to assist her mother. Michigan law does not require a person to sever all practical or familial connections with a former residence before establishing a new domicile. The critical question is whether Wells intended Redford or Birmingham to be her true, fixed, and permanent home. On this record, the answer is Birmingham.

Nor do I read the record evidence concerning Wells's belongings as creating a genuine issue of material fact. Wells acknowledged that she kept personal items at Redford because she occasionally stayed there overnight to assist her mother.[1] But she did not testify that the presence of those items there meant that Redford remained her home. To the contrary, Wells testified that after her marriage she lived with her husband and no longer maintained a bedroom at Redford. Similarly, regarding rent, Wells testified that she was no longer responsible for paying rent for the Redford home after she moved out, although she would sometimes provide financial assistance to her family if help was needed. These facts reflect continuing family support and practical ties to Redford; they do not create a genuine factual dispute regarding domicile.[2]

---

[1] The majority notes that Wells "described the belongings she kept at the Redford address as 'everything.' " In context, however, Wells was not using "everything" to describe the quantity or share of her possessions kept at Redford. She was asked what "stuff" she kept there, and she responded, "Everything from toothbrush to multiple shoes, purses, clothing, pajamas, everything." When counsel asked whether she kept those items there "[i]n case [she] stay[ed] the night" and needed a wardrobe, Wells answered, "Yes." Read in context, Wells's testimony described the range of personal items she kept at Redford for occasional overnight stays; it was not testimony that all, or even most, of her possessions were kept there.

[2] The majority states that "half of [Wells's] possessions [we]re at the Redford address and half at the other address." Respectfully, that characterization omits important context and risks conflating

-3-

Campbell's testimony does not alter the analysis. Campbell testified that Wells split time between the Redford and Birmingham addresses, and she acknowledged that Wells stayed in Birmingham during the period immediately preceding the accident and at the time of the accident itself. Campbell's testimony therefore corroborates, rather than contradicts, Wells's stated intent that Birmingham became her primary residence after her marriage.

I likewise do not believe that the Redford address appearing on the insurance policy creates a genuine factual dispute regarding Wells's domicile at the time of the accident. Wells explained that she listed the Redford address when applying for insurance in 2020 because, at that time, she was still moving between Redford and her then-future husband's residence in Livonia. The continued appearance of that address on later insurance documents does not change the relevant question, which is Wells's domicile in July 2021. Given Wells's testimony that, after her April 2021 marriage and May 2021 move to Birmingham, she lived with her husband and no longer lived at Redford, the continued appearance of the Redford address on insurance documents does not create a genuine issue of material fact.

Applying the *Workman* factors, no reasonable factfinder could find that Wells was domiciled in Redford. The first factor, Wells's subjective or declared intent, strongly favors defendant. Wells testified that, after her marriage, she lived with her husband and was living in Birmingham at the time of the accident. The second factor, the formality or informality of Wells's relationship with the members of the alleged Redford household, is at most neutral. Wells had close familial relationships in both households: her husband in Birmingham, and her mother and children in Redford. The third factor, whether Wells lived in the same house, curtilage, or premises as the alleged Redford household, favors defendant because the Redford and Birmingham residences were separate homes in different cities. The fourth factor, the existence of another place of lodging, also favors defendant. Birmingham was not merely another place where Wells occasionally stayed; it was the home where she lived with her husband. Redford, by contrast, was an occasional place to stay when Wells assisted family members.

The *Dairyland* considerations point to the same conclusion. Although Wells continued to receive some mail at Redford and kept some possessions there, she no longer maintained a bedroom there, had relocated to Birmingham with her husband, and testified unequivocally that she did not live in Redford at the time of the accident. Keeping some belongings at a former family

---

distinct points in time. Wells's "half and half" testimony did not concern her living arrangements in July 2021, her move to Birmingham in May 2021, or her intent at the time of the accident. Rather, Wells was asked whether she took all of her belongings from the Redford home when she moved in with her then-future husband in Livonia in 2018, and she answered that she took some but not all of them. She was then asked whether the majority of her possessions were in Livonia or Redford at that time, and she responded, "About half and half." Properly understood, that testimony shows only that Wells left some possessions in Redford when she began staying with her then-future husband in 2018. It does not show where her possessions were in July 2021, after her marriage and move to Birmingham, much less where she intended to make her permanent home at that time. It therefore does not create a genuine issue of material fact regarding Wells's domicile in July 2021.

residence is not uncommon and, standing alone, does not create a question of fact regarding domicile. More importantly, the evidence showed that Wells's daily life, marital household, and intended permanent residence were centered in Birmingham.

The majority appropriately recognizes that domicile is generally a question of fact. But when the underlying facts permit only one reasonable conclusion, domicile must be decided as a matter of law. See *Fowler*, 254 Mich App at 364; *Rowland v Detroit*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 372120); slip op at 1 ("When there is no genuine issue of material fact, it is the trial court's *obligation* under MCR 2.116(I)(1) to grant summary disposition to the prevailing party."). In my view, this is such a case. The evidence cited by plaintiffs shows that Wells retained practical and familial connections to Redford. It does not show that she intended Redford to remain her true, fixed, and permanent home after she married and moved to Birmingham.

Because no reasonable factfinder could conclude on this record that Wells was domiciled at the Redford address in July 2021, Campbell was not a relative domiciled in the same household as the named insured. I would therefore affirm the trial court's order granting summary disposition in defendant's favor, and I respectfully dissent.

/s/ Matthew S. Ackerman